770 So.2d 319 (2000)
STATE of Louisiana
v.
Daniel SANTOS.
No. 99-KO-1897.
Supreme Court of Louisiana.
September 15, 2000.
*320 Darryl Anthony Derbigny, New Orleans, Counsel for Applicant.
Daniel Santos, Applicant, pro se.
Walter H. Drake, Jr., Richard P. Ieyoub, Attorney General, John F. Rowley, Chalmette, Counsel for Respondent.
PER CURIAM:
Affirming relator's conviction and sentence for possession of heroin in violation of La.R.S. 40:966(C)(1), the court of appeal found no error in the trial court's denial of relator's motion to discharge his court-appointed counsel and to represent himself because relator "appeared incompetent to serve as his own counsel in that he did not understand how to proceed on important aspects of his case." State v. Santos, 97-1893, p. 8 (La.App. 4th Cir. 5/19/99), 744 So.2d 241 (unpub'd). In a colloquy intended to impress upon relator the dangers of self-representation, the trial court established for the record that relator had only the most rudimentary knowledge of how to summon a witness to court on his behalf, little or no idea how to protect his interests in a pending writ application filed by his appointed counsel in the court of appeal challenging the denial of his motion to suppress the evidence, and no knowledge about the use of peremptory and cause challenges in the selection of a jury. The trial court found that relator did not "have access to the legal training, experience, as well as the research that would be necessary to prepare for a trial in this matter," and denied his motion for self-representation on that basis.
The concern of the trial court and the court of appeal for the impact relator's lack of legal training might have had on the fairness of the proceeding reflects longstanding misgivings about the probable consequences of self-representation. Even as it recognized the Sixth Amendment right of an accused to waive the assistance of counsel and to represent himself or herself at trial, the Supreme Court acknowledged that "[t]here can be no blinking the fact that the right of an accused to conduct his own defense seems to cut against the grain of this Court's decisions holding that the Constitution requires that no accused can be convicted and imprisoned unless he has been accorded the right to the assistance of counsel.... For it is surely true that the basic thesis of those decisions is that the help of a lawyer is essential to assure the defendant a fair trial." Faretta v. California, 422 U.S. 806, 832, 95 S.Ct. 2525, 2540, 45 L.Ed.2d 562 (1975) (citations and footnote omitted). These concerns have not diminished over the years. See Martinez v. Court of Appeal of California, 528 U.S. 152, 164, 120 S.Ct. 684, 692, 145 L.Ed.2d 597 (2000) (Breyer, J., concurring) (While "judges closer to the firing line have sometimes expressed dismay about the practical consequences of [Faretta's] holding.... I have found no empirical research ... that might help determine whether, in general, the right to represent oneself furthers, or inhibits, the Constitution's basic guarantee of fairness.").
*321 Nevertheless, despite the potential impact an accused's waiver of counsel may have on the fairness of the proceedings, Faretta made clear that the accused's "technical legal knowledge, as such, [is] not relevant to an assessment of his knowing exercise of the right to defend himself." Faretta, 422 U.S. at 836, 95 S.Ct. at 2541; see also Martinzez, 528 U.S. at 165, 120 S.Ct. at 693 (Scalia, J., concurring) ("That asserting the right of self-representation may often, or even usually, work to the defendant's disadvantage is no more remarkableand no more a basis for withdrawing the rightthan is the fact that proceeding without counsel in custodial interrogation, or confessing to the crime, usually works to the defendant's disadvantage. Our system of laws generally presumes that the criminal defendant, after being fully informed, knows his own best interests and does not need them dictated by the State."). A trial judge confronted with an accused's unequivocal request to represent himself need determine only whether the accused is competent to waive counsel and is "voluntarily exercising his informed free will." Faretta, 422 U.S. at 835, 95 S.Ct. at 2541. In this context, "the competence that is required of a defendant seeking to waive his right to counsel is the competence to waive the right, not the competence to represent himself." Godinez v. Moran, 509 U.S. 389, 399, 113 S.Ct. 2680, 2687, 125 L.Ed.2d 321 (1993) (footnote omitted).
In the present case, the trial court and court of appeal therefore erred in assessing relator's competence to waive counsel according to a standard appropriate for measuring the competence of counsel against professional norms. Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984) ("The benchmark for judging any claim of ineffective-ness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."). By written motion and personally in open court, relator made an unequivocal request to discharge his court-appointed counsel and to represent himself. Relator explained to the court that he feared "the Indigent Defender Board is working with the police of St. Bernard Parish to keep me here." He thereby voiced a concern at the heart of the right to self-representation. Faretta, 422 U.S. at 826, 95 S.Ct. at 2537 ("When the Colonies were first settled, the lawyer was synonymous with the cringing Attorneys-General and Solicitors-General of the Crown and the arbitrary Justices of the King's Court, all bent on the conviction of those who opposed the King's prerogatives, and twisting the law to secure convictions.") (citation and internal quotation marks omitted). Relator made his request over a month before trial. Martinez, 528 U.S. at 162, 120 S.Ct. at 691 ("[M]ost courts require [a defendant] to [make the request] in a timely manner.") (footnote omitted); State v. Hegwood, 345 So.2d 1179, 1182 (La.1977) ("[A] criminal defendant who has acquiesced in the representation of counsel, who for the first time requests to represent himself the morning of trial under circumstances which indicate that the request was a delaying tactic, and who makes no showing at all of any particular reason for his delay in asserting that right has impliedly waived his right to self-representation."). Relator maintained the request despite questioning by the trial judge meant to impress upon him "the dangers and disadvantages of self-representation." Faretta, 422 U.S. at 835, 95 S.Ct. 2541. In turn, relator impressed upon the trial judge his competence to make the decision by stating that he had enjoyed an "A" average during two years of college and that he had no mental or physical problems that might interfere with his understanding of the proceedings, an assertion fully borne out by his colloquy with the court.
In the present case, as in Faretta, the record thus affirmatively shows that relator was competent to waive counsel and that, even after the court impressed upon *322 him the uncertainties of his decision, he asserted his right of self-representation unequivocally and under circumstances which precluded a finding that he was simply engaged in dilatory tactics. Other alternatives short of denying relator his Sixth Amendment right to self-representation remained open to the trial court concerned about maintaining the fairness of the proceedings. Although relator specifically requested discharge of his court appointed counsel, the trial court could have assigned the attorney or another attorney as stand-by counsel to aid relator, even over relator's objections, or to resume representation of relator if circumstances required the court to terminate his right of self-representation. Faretta, 422 U.S. at 834, n. 46, 95 S.Ct. at 2541; see McKaskle v. Wiggins, 465 U.S. 168, 187, 104 S.Ct. 944, 956, 79 L.Ed.2d 122 (1984) (stand-by counsel may participate in the trial as long as he does not "seriously undermin[e the defendant's] appearance before the jury in the status of one representing himself.").
The trial court therefore erred in denying relator his Sixth Amendment right to self-representation and the error is not subject to harmless-error analysis. Wiggins, 465 U.S. at 177, n. 8, 104 S.Ct. at 950 ("Since the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to `harmless error' analysis. The right is either respected or denied; its deprivation cannot be harmless.").
Accordingly, relator's conviction and sentence are reversed and this case is remanded to the district court for all proceedings consistent with the views expressed herein.
CONVICTION AND SENTENCE REVERSED; CASE REMANDED.