823 So.2d 367 (2002)
STATE of Louisiana, Appellee,
v.
Marshall T. BATCHELOR, Appellant.
No. 35,478-KA.
Court of Appeal of Louisiana, Second Circuit.
May 10, 2002.
Opinion on Grant of Rehearing July 24, 2002.
*369 Paula Corley Marx, Lafayette, Carey J. Ellis, III, Rayville, Marshall T. Batchelor, for Appellant.
Richard Ieyoub, Attorney General, James David Caldwell, District Attorney, James Trey Phillips, Assistant District Attorney, for Appellee.
Before NORRIS, C.J., BROWN and STEWART, JJ.
NORRIS, Chief Judge.
Marshall Batchelor appeals his conviction of armed robbery and sentence of 60 years at hard labor without benefit of probation, parole, or suspension of sentence, with credit for time served. For the following reasons, we reverse his conviction and sentence and remand the case to the trial court.

Facts
On June 22, 1998, Batchelor was drinking beer outside of the Wyche Apartments when Brett Peoples delivered a pizza there to Theodore and Annie McGowan. After *370 Peoples delivered the pizza, Batchelor and his two associates, Tyrone Henton and Nakia Brown, forced Peoples behind the building. Peoples offered no resistance, pleaded for them to leave him alone, and told his assailants to take whatever of value he had. Instead, his assailants knocked him to the ground and began hitting and kicking him about the body and head. Peoples was aware of someone taking his watch, wallet, and shoes before he lost consciousness.
From inside her apartment, Annie McGowan heard the men forcing Peoples behind the building and opened her door to see the source of the noise. She saw that Batchelor, Henton, and Brown had Peoples on the ground and were beating and kicking him. Specifically, she saw Batchelor beating Peoples with a rusty iron implement and a brick. Her husband, Theodore, also saw Batchelor strike Peoples with a brick several times. The McGowans then went back into their apartment and called the police to report the crime. A neighbor of theirs, Latasha Dixon, also saw the events that evening and went to a payphone to call the authorities.
Peoples appeared dead to paramedics who arrived at the scene about the same time as the police. He had suffered blunt trauma to the head, bleeding from the ears and mouth, and permanent brain damage as a result of the severe beating. He also had severe facial edema, or swelling, and showed signs of a possible linear skull fracture.
Batchelor was apprehended by police that same evening when he returned to the scene. He was taken into custody that night and gave a statement of his involvement in the crime. Batchelor was charged with several felony offenses and found guilty of armed robbery by trial before a jury on December 1, 2000. He was sentenced to 60 years at hard labor, without benefit of probation, parole, or suspension of sentence, with credit for time served.
Batchelor objected to the sentence at the sentencing hearing, although he filed no written motion to reconsider sentence. Batchelor then filed for appeal. Batchelor argues that the evidence presented is insufficient to support a conviction for armed robbery, that his sentence of 60 years at hard labor is unconstitutionally excessive, and argues pro se that he was denied his constitutional right to self-representation.

DiscussionSufficiency of the Evidence
Although the record does not reflect that Batchelor filed a motion for post verdict judgment of acquittal pursuant to La. C.Cr.P. art 821, this court will consider sufficiency arguments in the absence of such a motion. State v. Green, 28, 994 (La.App.2d Cir.2/26/97), 691 So.2d 1273.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. When the direct evidence is thus viewed, the facts established *371 by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
In order to support a defendant's conviction as a principal, the state must show that the defendant had the requisite mental state for the crime. State v. Brooks, 505 So.2d 714 (La.1987), cert. denied, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987); State v. Richardson, 96-2598 (La.App. 4th Cir.12/17/97), 703 So.2d 1371, writ denied, 98-0228 (La.9/25/98), 726 So.2d 7. The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Huizar, 414 So.2d 741 (La. 1982); State v. Dean, 528 So.2d 679 (La. App. 2d Cir.1988). Though intent is a question of fact, it need not be proved as a fact. It may be inferred from the circumstances. State v. Kahey, 436 So.2d 475 (La.1983).
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals. La. R.S. 14:24.
Armed robbery is defined as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." La. R.S. 14:64. A dangerous weapon is defined as "any gas, liquid or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm." La. R.S. 14:2(3).
The production of a weapon is not necessary in an armed robbery prosecution where the state can establish through witness observations at the crime scene, all of the elements of the offense beyond a reasonable doubt, including the existence and use of a dangerous weapon. State v. James, 33,262 (La.App.2d Cir.3/10/00), 754 So.2d 429, writ denied, XXXX-XXXX (La.3/9/01), 786 So.2d 113.
This court's review does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). The jury's decision to accept or reject the testimony of a witness in whole or in part will be accorded great deference. State v. Bosley, supra; State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir. 1986), writ denied, 499 So.2d 83 (1987).
The record is replete with direct and circumstantial evidence which, viewed in the light most favorable to the prosecution, supports the jury's finding that Batchelor was guilty, beyond a reasonable doubt, of being a principal in the armed robbery of Brett Peoples. Jackson v. Virginia, supra. Even without considering Batchelor's incriminating recorded statement and the testimony of his co-defendant, Brown, the testimony of objective eyewitnesses, the McGowans and Dixon, is direct evidence supporting the jury's finding that Batchelor was involved in the taking of something of value belonging to Peoples, from the person of Peoples, by use of force while armed with a dangerous weapon.
The evidence shows that the brick was a dangerous instrumentality in the instant case. In the manner Batchelor used the brick, it was likely to produce death or great bodily harm, and can therefore be defined as a dangerous weapon. *372 La. R.S. 14:2(3). This conclusion is supported in part by testimony given by Jerry Strong, the emergency medical technician, together with the photographs and testimony of the victim, Brett Peoples, regarding the severity of the injuries the victim suffered as a result of the crime.
From the McGowans' testimony alone the jury could reasonably conclude that Batchelor was a principal, as he was directly involved in the commission of this armed robbery. La. R.S. 14:24. The McGowans' testimony directly supports the finding that Batchelor participated in beating the victim while his co-defendants robbed the victim. Batchelor's criminal intent to commit the armed robbery of the victim is easily inferred from these circumstances. State v. Kahey, supra.
Under La. R.S. 14:24, the state need not prove that the defendant directly took anything of value from the victim during the crime to be found a principal to the armed robbery. Nevertheless, the McGowans' testimony was corroborated by Latasha Dixon, and the physical evidence supports the trial testimony that the victim's wallet, keys, and shoes were taken during the crime. Batchelor's role as a principal in this armed robbery is further supported by Brown's testimony, which implicates Batchelor as the instigator of the crime and a recipient of some of the stolen money. Finally, in Batchelor's own recorded statement he admits that he participated in kicking the victim and threw a brick at him. Batchelor's admission that he "let" his co-defendant take the victim's valuables is further proof of his role in the crime.
Contrary to Batchelor's argument, the production at trial of a weapon was not necessary for Batchelor's armed robbery conviction. The state established through witness observations at the crime scene all of the elements of the offense beyond a reasonable doubt, including the existence and use of a dangerous weapon. State v. James, supra. This assignment is therefore without merit.

Self-representation
In his pro se brief, Batchelor asserts that the trial court was in error for failing to grant his motion to dismiss his counsel and allow him to represent himself at trial. Batchelor claims that his conviction was obtained in violation of his constitutional right to self-representation, as recognized by the case of Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), because the trial court failed to conduct a proper Faretta hearing.
An accused has the right to choose between the right to counsel and the right to self-representation. State v. Bridgewater, XXXX-XXXX (La.1/15/02), 823 So.2d 877; State v. Strain, 585 So.2d 540, 542 (La. 1991). As the Louisiana Supreme Court has noted, "A trial judge confronted with an accused's unequivocal request to represent himself need determine only whether the accused is competent to waive counsel and is `voluntarily exercising his informed free will.'" State v. Santos, 99-1897 (La.9/15/00), 770 So.2d 319, 321, quoting Faretta, supra.
Batchelor first filed his written motion to dismiss counsel and represent himself on October 14, 1999. He reiterated this request immediately before his trial by a written filing on November 29, 2000. In both of his filings, Batchelor specifically cited Faretta and claimed the constitutional right to represent himself, stating that he desired to proceed pro se with stand-by counsel only, and that he was making this request "with his eyes opened." R. p. 114. Batchelor clearly and unequivocally declared his desire to exercise his Sixth Amendment right to represent himself. *373 See State v. Carpenter, 390 So.2d 1296 (La.1980).
The motion was heard in open court February 7, 2000, at which time trial was set for March 20, 2000. As in Santos, supra, Batchelor's request was made "under circumstances which precluded a finding that he was simply engaged in dilatory tactics." Bridgewater, supra.
A review of the transcript of the trial court proceeding which resulted in the denial of Batchelor's motion reveals that the trial court did not conduct any meaningful inquiry to determine if Batchelor was competent to waive his right to counsel. At the hearing, Batchelor's court-appointed attorney told the court that he believed Batchelor "has a right to represent himself." The trial court then asked Batchelor if he "had anything to say." Batchelor replied, "No, sir." The trial court then denied his motion. See, Supp. R. (2/7/00), p. 10.
The trial court should have interrogated Batchelor to determine if he was competent to waive his right to counsel. The competence that is required of a defendant seeking to waive his right to counsel is the competence to waive the right, not the competence to represent himself. Santos, supra, quoting Godinez v. Moran, 509 U.S. 389, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993). The trial court must determine whether defendant's waiver of counsel is "intelligently and voluntarily made." State v. Carpenter, supra; State v. Hegwood, 345 So.2d 1179 (La.1977). "There must be a sufficient inquiry (an interchange with more than "yes" and "no" responses by the defendant) to establish on the record that the defendant is making an intelligent and knowing waiver under the circumstances." Strain, supra, at 542.
During this hearing, the defendant should have been informed of the consequences of proceeding without counsel. State v. LaFleur, 391 So.2d 445 (La.1980), citing Faretta, supra. There should be some indication that the trial judge tried to assess the defendant's literacy, competency, understanding and volition. State v. Bell, 381 So.2d 393 (La.1980). The trial judge should have advised the defendant of the nature of the charges and the penalty range, inquired into the accused's age, education and mental condition, and determined according to the totality of the circumstances whether the accused understood the significance of the waiver. State v. Dunn, 30,269 (La.App. 2 Cir. 2/25/98), 713 So.2d 479, citing Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948).
The trial court's error in denying Batchelor his Sixth Amendment right to self-representation is not subject to harmless-error analysis. Santos, supra; McKaskle v. Wiggins, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984). Because Batchelor's conviction and resulting sentence are reversed, it is not necessary to address Batchelor's claim that he received a constitutionally excessive sentence.
Because we find that the trial court made no meaningful effort to inform Batchelor of the consequences of proceeding without counsel, try to assess the defendant's literacy, competency, understanding, or volition, or determine whether defendant's waiver of counsel was "intelligently and voluntarily made," we must reverse the conviction and sentence, and remand this case to the trial court for new proceedings.

Conclusion
For the foregoing reasons, Batchelor's conviction and sentence are reversed and this case is remanded to the trial court for all proceedings consistent with the views expressed herein.
*374 CONVICTION AND SENTENCE REVERSED;
CASE REMANDED.
BROWN, J., dissents with reasons.
BROWN, J., dissenting.
The transcripts of the hearings on February 7, 2000, and November 27, 2000, clearly show that the issue presented and argued concerned whether defense counsel was ineffective or had a conflict of interest. On October 14, 1999, defendant filed a handwritten Motion For Dismissal of Counsel. In the motion, defendant complained that counsel failed to secure his release from jail. In one paragraph, he asked that he be allowed to proceed pro se with standby counsel only; however, when he appeared in court that same day and was asked by the judge whether he wished to enter a plea of not guilty, he replied, "I rather not say unless I have a presence of counsel." The court declined to dismiss counsel on February 7, 2000.
On the day of trial, November 27, 2000, defendant filed another Motion For Dismissal of Counsel citing ineffective assistance and again including a paragraph seeking to be allowed to proceed pro se with standby counsel.[1] What was argued concerned only the court appointed attorney's alleged conflict of interest.
The trial court ruled:
... Court has had an opportunity to review the complaint filed in federal court by Mr. Batchelor against Mr. Kelly. Court finds that after extensive review of the documents and also by virtue of Mr. Kelly's sworn representation to the Court that he has diligently represented Mr. Batchelor to this point and that I, the court is convinced that there is nothing in the record and there is nothing that has been demonstrated by Mr. Kelly that would adversely affect his ability to proceed as effective counsel on behalf of Mr. Batchelor. Court also notes that I think that if co-counsel were appointed at this time, or substitute counsel were appointed at this juncture of the proceedings that it would create more problems than such action would solve, those problems being for the substitute attorney, that attorney's liability, and ability to prepare for trial. Therefore, the motion to appoint counsel is denied ...
This hearing took place on the day of trial and, like at the hearing on February 7, 2000, when defendant was asked whether he had anything further, he never mentioned a desire for self-representation. Clearly this was a delaying tactic. The court did not deny a request for self-representation and only ruled on the issues argued, which were ineffectiveness and an alleged conflict of interest. Under these circumstances, I question whether defendant sought self-representation and, if he did, it was implicitly waived. Thus, I respectfully dissent.
Before NORRIS, BROWN, STEWART, CARAWAY and PEATROSS, JJ.
BROWN, J., on rehearing,
We granted rehearing in this case to reconsider the initial two-judge opinion which held that defendant's armed robbery conviction was obtained in violation of his constitutional right to self-representation. On reconsideration, we find no merit to this argument and affirm defendant's conviction and sentence.

*375 Discussion

Applicable Legal Principles
The Sixth Amendment right of self-representation cannot be exercised without the waiver of another fundamental right also guaranteed by the Sixth Amendment, the right to counsel. Buhl v. Cooksey, 233 F.3d 783 (3d Cir.2000).[1]
An accused may waive his right to counsel and choose to represent himself; however, such a waiver and choice must be knowingly, intelligently and unequivocally asserted. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); State v. Strain, 585 So.2d 540 (La.1991). Courts must indulge in every reasonable presumption against a waiver of counsel. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), Johnson, supra; Buhl, supra. In order to overcome this presumption and represent himself, a defendant must clearly and unequivocally ask to proceed pro se. Faretta, supra; Brown v. Wainwright, 665 F.2d 607 (5th Cir.1982). Requests which vacillate between self-representation and representation by counsel are equivocable. United States v. Bennett, 539 F.2d 45 (10th Cir.1976), cert. denied, 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 293 (1976). A defendant who vacillates between self-representation and representation by counsel cannot be said to have waived his right to learned counsel. United States v. Frazier-El, 204 F.3d 553 (4th Cir.2000), cert. denied, 531 U.S. 994, 121 S.Ct. 487, 148 L.Ed.2d 459 (2000); State v. Treadway, 97-901 (La.App. 5th Cir.03/25/98), 710 So.2d 1121, writs denied, 98-1634 (La.09/25/98), 725 So.2d 490, 00-1197 (La.01/12/01), 780 So.2d 1067.
The right to self-representation is not absolute. A defendant must voluntarily and intelligently reject representation by an attorney and elect to conduct his own defense and must do so in a timely manner. Martinez v. Court of Appeal of California, 528 U.S. 152, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000). Whether a defendant has knowingly, intelligently and unequivocally waived his right to counsel and asserted the right to self-representation must be determined based on the facts and circumstances of each case. Johnson, supra; State v. Strain, supra.

Analysis
On the date that his trial was scheduled to begin, November 27, 2000, defendant filed a "Motion for Dismissal of Counsel," urging that his court-appointed attorney had provided him with ineffective assistance of counsel in that he:
has failed to file nessesary (sic) pleadings to secure defendent (sic) constitutional rights of due process of law; ... has deliberately denied the defendent (sic) access to court by depriving the defendent (sic) of the final rulings of pleadings ... from the clerk's office on the defendent's (sic) pro se motion[s];... has not provided copies of transcripts and pertinent court minutes [and copies of judgments, orders or written rulings]; ... [has a] conflict of interest.
Defendant also included a paragraph asserting his right to represent himself and asking the court to allow him to proceed pro se with standby counsel.[2]
*376 On that same date, defendant's attorney, having learned that defendant had filed a complaint against him with the Louisiana Bar Association's Office of Disciplinary Counsel, filed a "Motion to Appoint Counsel," in which he asked the court to appoint co-counsel or another attorney so as to avoid any "prejudice or the appearance of impropriety."
Prior to beginning the process of selecting the jury, the trial court held a hearing on the above motions. Defendant testified that he filed the motion for dismissal because he felt that his attorney was not representing him effectively in that counsel had been "telling fibs" and failing to visit with him. Further, defendant took issue with the fact that his attorney had not provided him with copies of requested documents and felt that there was a conflict of interest arising out of a civil rights lawsuit he had filed against counsel, as well as the fact that defendant's father had allegedly campaigned for Judge Brackin, who was running against defense counsel's wife for an unspecified court seat.
Defendant's attorney, Michael Kelly, stated that it was only out of an abundance of caution that he filed a motion to have another attorney appointed to represent defendant after he learned that his client had filed a bar complaint against him. Kelly noted that he felt it was important that he make the court aware of the potential conflicts and stated that he had his client's best interest at heart. Kelly denied lying to his client and stated that he has provided defendant with as much information as he has received.
In response to questions posed by the court, Kelly stated that:
I would represent Mr. Batchelor with the utmost integrity, fight as vigorously as I can for his rights and to see that justice is awarded in accordance with whatever evidence [is] presented at trial. I don't see a conflict of interest ... I spoke with [defendant's] father and he asked that I would represent his son. I told him I could. So, I don't see that as a conflict.... I just wanted to make the court aware of the possible conflict of interest.
Furthermore, after reviewing a copy of defendant's civil rights complaint against him, Kelly responded:
I don't see anything that would affect my representation of Mr. Batchelor. It is an irritation to have your client adversarial to you in a proceeding. However,... I am prepared. I have reviewed the case. I have studied the case inside and out.... I am acting in good faith ... I am working diligently for [defendant's] best interest. I also would like to note that Mr. Batchelor has expressed a direct intent to have me terminated as his counsel and to acquire his own counsel pursuant to arrangements made by his family.... I don't know if this is a dilatory tactic or if this ... is in good faith.
At that point, the court asked defendant whether he had any questions for his attorney and defendant replied:
No, Your Honor. I think that everything that I have spoken and the paper-work *377 that I have written upon here I think it speaks for itself.
The court then ruled as follows:
Court finds that after extensive review of the documents and also by virtue of Mr. Kelly's sworn representation to the Court that he has diligently represented Mr. Batchelor to this point and that I, the court, [am] convinced that there is nothing in the record and there is nothing that has been demonstrated by Mr. Kelly that would adversely affect his ability to proceed as effective counsel on behalf of Mr. Batchelor. Court also notes that I think that if co-counsel were appointed at this time, or substitute counsel were appointed at this juncture of the proceedings that it would create more problems than such action would solve, these problems being for the substitute attorney, that attorney's liability and ability to prepare for trial.
As the preceding excerpts illustrate, the focus of the hearing on November 27, 2000, was on the effectiveness of representation by court-appointed counsel as well as an alleged conflict of interest. When defendant was asked specifically whether he had anything further to add, he answered that he did not. Defendant did not assert, unequivocally or otherwise, a desire to represent himself. Clearly, his motion, filed on the date that trial was to begin, was a dilatory tactic. See State v. Seiss, 428 So.2d 444 (La.1983); State v. Marshall, 99-2176 (La.App. 4th Cir.08/30/00), 774 So.2d 244, writ denied, 00-3038 (La.10/26/01), 799 So.2d 1149.
The court made its ruling on the basis of the issues argued, ineffectiveness of counsel and an alleged conflict of interest. Notwithstanding a paragraph requesting self-representation in his motion to dismiss counsel, it is questionable whether defendant actually sought to assert the right of self-representation. Assuming, however, that he did seek to represent himself, defendant's vacillation between wanting to be represented by counsel and desiring to undertake his own defense, together with his failure to specifically assert this right at the November 27th hearing, constitutes an implicit waiver of his request. See United States v. Frazier-El, supra; State v. Treadway, supra.
Taking this record as a whole, we find that the trial court was justified, when confronted with defendant's vacillation between his request for another attorney and his request for self-representation, in requiring defendant to proceed to trial with his appointed counsel.
The original majority opinion addressed the sufficiency of the evidence, but did not reach the issue of excessiveness. The record reveals that defendant failed to timely file a La.C.Cr.P. art. 881.1 motion to reconsider sentence. Therefore, we are limited to reviewing the bare claim that the sentence is constitutionally excessive under State v. Mims, 619 So.2d 1059 (La.1993). Nonetheless, the record shows that the trial court fully and adequately complied with the provisions of La.C.Cr.P. art. 894.1. Furthermore, the record does not support defendant's contention that his 60-year sentence is unconstitutionally excessive. Considering the brutal and coldblooded circumstances of the crime, defendant's background and his extensive criminal history, the sentence is neither grossly disproportionate to the severity of the offense, nor does it shock the sense of justice. State v. Lobato, 603 So.2d 739 (La. 1992).

Conclusion
For the reasons set forth above, defendant's conviction and sentence are affirmed.
*378 NORRIS, C.J., dissents with reasons.
STEWART, J., dissents with reasons assigned by J. Norris.
NORRIS, Chief Judge, dissenting.
I respectfully dissent. Any fair reading of this record shows that Marshall Batchelor clearly and unequivocally requested the right to represent himself at trial, a right guaranteed by Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).
Although the majority relegates this to a footnote, I consider it significant that Batchelor filed his first written motion to dismiss counsel and represent himself on October 14, 1999. R.p. 114. Since his trial date was still some five months hence, this filing cannot be viewed as a dilatory tactic. The motion states, in extenso:
Now comes the pro se litigant Marshal T. Batchelor into Court to file the above captioned motion pertaining to the above enumerated matters. The defendant moves this Honorable Court to dismiss counsel for the following reasons hereinafter set forth:
(1).
Pursuant to Faretta v. The State of California, a Supreme Court Decision, the defendant has a Constitutional right to represent himself.
(2).
Defendant avers that his request to dismiss counsel is being made with sound-mind with his eyes opened.
(3).
Counsel has failed to file necessary pleadings such as a writ of Habeas Corpus and Applications for a Writ of Review to secure the defendant's release in this matter. Had counsel filed such aforementioned pleadings, the defendant could have been released without bond obligation. Instead, counsel has deliberately denied the defendant access to Court by depriving the defendant of the files that he received from the Clerk's office on the defendant's pro se Application for a Writ of Habeas Corpus. Therefore counsel has provided the defendant with ineffective assistance and caused unnecessarily prolonged incarceration upon the defendant.
Wherefore, the defendant prays that this Honorable Court deem his Reasons good and sufficient to grant the foregoing motion, or show just cause for not doing so.
Defendant further prays that this Honorable Court allow him to proceed pro se in this matter with standby counsel only.
Defendant finally prays that this Honorable Court direct the clerk to provide all parties to these proceedings with a certified copy of this Rule or show just cause for not doing so.
Done and signed this 13 th day of October, 1999. (Emphasis added)
This request is neither latent, tentative nor incidental to any other demands. It forms the entirety of his request for relief.
While the majority correctly notes that Batchelor made a court appearance on October 14, the transcript plainly discloses that the court did not address the motion filed that date. Instead, Batchelor appeared without counsel and the court asked him to enter a plea. Batchelor declined to do so without "a presence of counsel." I do not consider this inconsistent with the relief he sought in his motion, since the motion had obviously not been addressed.
Batchelor's motion was not heard in court until February 7, 2000. In my view, *379 the District Court conducted no inquiry let alone an adequate oneinto whether Batchelor was competent to waive counsel. Counsel advised the court that, in his view, the defendant "has a right to represent himself," and suggested that he be appointed as "standby counsel" for Batchelor during the proceedings. The prosecutor argued against this arrangement, complaining that "if we allow defendants to start filing these pro se motions every time they become upset with their attorney, we would never get anything done." The court stated that it understood Batchelor's desire to represent himself with standby counsel, but denied the motion with no further explanation; counsel objected. The entire colloquy occupies a mere three transcript pages.
On the first day of trial, November 27, 2000, the court held a hearing on defense counsel's motion to appoint counsel and on Batchelor's pro se motion to quash. At this hearing, the court allowed defense counsel and the prosecutor to question Batchelor as to his motives for filing a complaint with the State Bar Association against his appointed counsel. Defense counsel acknowledged that it was an irritation to be in an adversarial position with his own client. The court denied the defense counsel's request for co-counsel or substitute counsel on the basis that it would "create problems" for the substitute attorney. Defense counsel raised theories of ineffective assistance and potential conflict of interest. There was never any discussion of Batchelor's right of self-representation.
Batchelor reiterated his right of self-representation by written motion filed on November 29, 2000, which is nearly identical to the first motion.
Unlike the majority, I am perplexed by the District Court's minute notation that the motion of November 29 was "already ruled on 11/27/00 by the court." In my experience, courts do not hold hearings on motions not yet filed. The November 27 hearing addressed counsel's motion to appoint counsel. By contrast, Batchelor's November 29 motion never received a hearing of any kind and has not been ruled on by the trial court.
At this late date, we can no longer debate the guiding principle that every accused has the right to choose between the right to counsel and the right of self-representation. State v. Strain, 585 So.2d 540 (La.1991); State v. Bridgewater, 00-1529 (La.1/15/02), 823 So.2d 877, modified on rehearing on other grounds 00-1529 (La.6/21/02), 823 So.2d at 909. When the accused asserts this right unequivocally, the court must determine whether he is competent to waive counsel and is "voluntarily exercising his informed free will." State v. Santos, 99-1897 (La.9/15/00), 770 So.2d 319.
I make these observations with full cognizance of the brutal and shocking nature of the offenses charged. However, expediency in prosecution must respect the rights of the defendant, no matter how repugnant the crime of which he is accused. See, United States v. Moussaoui, 2002 WL 1311738 (E.D.Va. June 14, 2002). In my view, the hearing of February 7, 2000, came nowhere near satisfying the requirements of Faretta v. California, State v. Strain, and other applicable jurisprudence.
I cannot subscribe to the majority's conclusion that Batchelor's request was vague, vacillating or waived. I would find that on two occasions he unequivocally asserted his right of self-representation, but that the District Court effectively ignored it and made no effort to determine his competency for self-representation or the voluntariness of his request. Finally, I would find no ruling on the November 29 motion.
*380 For these reasons, I would be obligated to reverse the conviction and remand the case for further proceedings.
I respectfully dissent.
NOTES
[1] The clerk noted that the handwritten document was filed on November 29; however, it was argued and denied on November 27.
[1] The rights granted under the Sixth Amendment of the United States Constitution are coextensive, in scope, operation and application, with those granted by the Louisiana Constitution, Article I, Section 13. State v. Carter, 94-2859 (La.11/27/95), 664 So.2d 367; State v. Ormond, 00-13 (La.App. 5th Cir.04/24/01), 786 So.2d 187.
[2] Previously, on October 14, 1999, defendant filed a similar "Motion for Dismissal of Counsel," urging that his attorney had failed to secure his release from jail. In one paragraph of this motion, defendant also asked that he be allowed to proceed pro se with standby counsel. When he appeared in court that same day, however, and was asked by the judge whether he wished to enter a plea of not guilty, defendant replied, "I rather not say unless I have presence of counsel." The court's ruling denying defendant's first request to dismiss his attorney was made on February 7, 2000. The court did not address any request for self-representation nor did defendant personally argue for such when given the opportunity to do so.