880 So.2d 201 (2004)
STATE of Louisiana, Appellee
v.
Noe STEPHAN, Appellant.
No. 38,612-KA.
Court of Appeal of Louisiana, Second Circuit.
August 18, 2004.
G. Warren Thornell, Shreveport, for Appellant.
Paul J. Carmouche, District Attorney, Hugo A. Holland, J. Thomas Butler, Assistant District Attorneys, for Appellee.
Before STEWART, PEATROSS and MOORE, JJ.
*202 STEWART, J.
The defendant, Noe Stephan ("Stephan"), entered a guilty plea to attempted aggravated burglary. The trial court entered a judgment sentencing Stephan to 15 years at hard labor from which he appeals. However, for the reasons that follow, the defendant's conviction and sentence are affirmed.

FACTS
Minimal facts about the offense are contained in the transcript of these proceedings since the defendant entered a guilty plea. The only facts in evidence are from the following recitation by the assistant district attorney:
Your Honor, the State alleges on January 14, 2000, the defendant Noe Stephan while in the company of Stephen Tauzin and Misty Ellis entered the residence of Gilbert Sibley (sic), which is an inhabited dwelling with the intent to commit a felony and theft while therein. The State alleges that while therein the defendant Noe Stephan attempted to arm himself with a dangerous weapon. The State alleges these facts constitute an attempted aggravated burglary as prohibited by R.S. 14:27 and 14:60 subparagraph 2.
However, there are extensive discovery documents filed in the record and these provide information regarding the investigation.
On January 14, 2000, officers were summoned to the victim's residence after a neighbor became concerned when the victim failed to come to the door. The neighbor looked through a broken window and saw the victim, Gilbert Moore, lying motionless on the floor.
When authorities arrived on the scene, they found the victim face down in a pool of blood. He had a large head wound. A hammer was located on the floor close to the victim's head and a syringe was stuck in his right buttock. The victim's home and truck had been ransacked.
The autopsy performed on the victim revealed that death was caused by multiple injuries from a beating with one or more heavy, blunt objects. There was evidence of at least twelve separate blows that crushed the skull. The characteristics of the majority of the head wounds were consistent with a claw hammer found at the scene. The victim's body contained evidence of approximately six blows, including injuries to the lower back and the forearms. The nature of these injuries indicated that they had been inflicted by a long, slender object such as a crowbar.
Initially, Stephan's girlfriend, Misty Ellis, denied knowing anything about Moore's death, but on March 29, 2000, she gave a statement implicating Stephan in the incident. Her final version was that she, Stephan, and another friend, Steven Tauzin, were at a bar on January 13, 2000, when she saw the victim. She told Stephan and Tauzin that she used to live with the victim and that some of her belongings were still at his house.
It was her idea for them to go to Moore's house to get her belongings. Tauzin broke a window, climbed inside, and then let Ellis and the defendant into the residence. While they were looking for her property, Ellis heard Moore yelling outside about the broken window.
She said she hid in a closet so Moore would not see her in his house. She said she heard some loud arguing and then a "big thud" and some gurgling sounds. She said about ten minutes later she came out to see what had happened. She said she saw Moore's body face down on the floor. She said Tauzin said he had hit him in the head and that Stephan was holding "the tool" that was about 14 inches *203 long. She drew a picture of what it looked like. It was then referred to as a "crow bar." She said Tauzin wiped his head with paper towels and he stuck the syringe in the body.
Ellis stated that Tauzin took the victim's keys from his pocket and went through his truck. When they left Ellis said she used the keys to lock the house and unlock a gate. She re-locked the gate and all three left in Stephan's mother's car that had been parked down the street. She said that Stephan's shirt, the keys and plastic gloves were thrown into the river off the Shreveport-Barksdale Bridge.
Stephan signed a form to be voluntarily fingerprinted on January 15, 2000. He was brought in for questioning on March 29, 2000, and signed a waiver of rights form. Stephan was being transported to his parents' residence in Bossier City when the officer driving him there was instructed to return him to the station. Stephan jumped out of a squad car while it was moving and fled into a residential section of Bossier City. An arrest warrant was issued that day.
According to other information in the record, the trio fled to Mexico after the murder, and Tauzin killed a woman there. Stephan was arrested on May 5, 2000, in El Paso, Texas. A notice of intent to seek the death penalty was filed on May 31, 2000.
On October 12, 2000, Stephan was charged with first degree murder in a secret grand jury indictment. On November 9, 2000, the indictment was amended to second degree murder. On February 4, 2003, another amended indictment charging him with second degree murder was filed. An amended indictment charging Stephan with attempted aggravated burglary and as a principal to the homicide of the victim was filed on October 8, 2003. Another amended indictment was filed on October 28, 2003, charging him with only attempted aggravated burglary.
On October 28, 2003, Stephan entered a guilty plea to attempted aggravated burglary and was sentenced to 15 years at hard labor. This appeal ensued.

DISCUSSION

Motion to Recuse Trial Judge
Stephan argues that the trial court erred in denying the motion to recuse the presiding judge who was actively engaged as the trial judge in the co-defendant's trial. Stephan argues further that evidence of bias toward him was the court's own motion questioning the sufficiency of the bond. The state argues that Stephan did not meet the burden of showing any bias, prejudice, or personal interest of a substantial nature and only presented conclusions of bias at the hearing for recusal.
We note that the entry of the guilty plea by Stephan waived his right to raise this issue on appeal. It is well settled that forgoing a trial "works a forfeiture of a vast range of rights, procedural and substantive." See State v. Valentine, 259 La. 1019, 254 So.2d 450 (1971), certiorari denied, Valentine v. Louisiana, 406 U.S. 963, 92 S.Ct. 2066, 32 L.Ed.2d 351 (1972). See also State v. Starks, XXXX-XXXX (La.3/28/02), 812 So.2d 638, rehearing denied, XXXX-XXXX (La.6/7/02), 817 So.2d 1141 ("Stark's guilty plea waived all nonjurisdictional defects in proceedings leading to the plea....")
As shown in State v. Watson, 37,090 (La.App.2d Cir.5/14/03), 847 So.2d 95, a defendant can have the guilty plea vitiated if he can show that he thought the plea was contingent on further review of the adverse pre-trial ruling. Under this scenario, the guilty plea would not be knowing *204 and voluntary. The court in Watson, supra, said;
A plea of guilty normally waives all non-jurisdictional defects in the proceedings prior to the plea. State v. Crosby, 338 So.2d 584 (La.1976). When the defendant, at the time of entering a guilty plea, expressly stipulates that he does not waive his right to the review of a non-jurisdictional pre-plea ruling, the appellate court will review that ruling. State v. Moore, 420 So.2d 1099 (La.1982).
As noted, defense counsel objected to the ruling on the motion to suppress but did not expressly reserve the right to have the denial of the motion reviewed on appeal. In the Boykin colloquy he unconditionally admitted his guilt and never once mentioned any intent to appeal the motion to suppress. Under the circumstances, the issue is not preserved for review. State v. Moore, supra; State v. King, 99-1348 (La.App. 5 Cir. 5/17/00), 761 So.2d 791, writ denied, 00-1824 (La.6/29/00), 794 So.2d 822; State v. Lawson, 95-1604 (La.App. 1 Cir. 12/20/96), 684 So.2d 1150, writ denied, 97-0191 (La.6/13/97), 695 So.2d 986. The assignment of error therefore lacks merit.
This assignment of error lacks merit. Nothing in this record indicates that Stephan would have any expectation that the denial of the motion to recuse the judge would be reviewed on appeal. Further, this applicant had already sought writs on the matter. The colloquy during the taking of the guilty plea shows that Stephan was advised of his rights under Boykin and waived them. The plea therefore is voluntary and will not be set aside.

Excessive Sentence
A trial court has broad discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion, an appellate court may not set aside a sentence as excessive. State v. Guzman, 99-1528, 99-1753 (La.5/16/00), 769 So.2d 1158.
Stephan argues that the sentence is excessive because he has an outstanding reputation in the community, he is not a violent person, and "the facts of this case do not reflect a situation that is likely to recur." The state argues that Stephan did not preserve the right of review by filing a motion to reconsider sentence regarding compliance with La. C. Cr. P. art. 894.1.
Under La. R.S. 14:60, whoever commits the crime of aggravated burglary shall be imprisoned at hard labor for not less than one nor more than thirty years When a person is charged with attempted aggravated burglary as Stephan was, he may be punished by fine or imprisonment not to exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both. See La. R.S. 14:27(D)(3).
Stephan's argument is not that the court failed to follow the mandate of La. C. Cr. P. art. 894.1, but rather that the trial court did not consider the correct factors during sentencing.
However, we note that no motion for reconsideration was filed. Consequently, the sentence can only be reviewed only for constitutional excessiveness. State v. Mims, 619 So.2d 1059 (La.1993); State v. Batchelor, 35,478 (La.App.2d Cir.5/10/02), 823 So.2d 367, on rehearing, writ denied, 2002-2247 (La.3/14/03), 839 So.2d 32.
A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). *205 A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864.
As a general rule, maximum sentences are appropriate in cases involving the most serious violation of the offense and the worst type of offender. State v. Grissom, 29,718 (La.App.2d Cir.8/20/97), 700 So.2d 541; State v. Walker, 573 So.2d 631 (La.App. 2d Cir.1991).
Stephan argues that the evidence indicates that his involvement was minimal. However, since this conviction is based on a guilty plea, there is very little evidence submitted. Moreover, the trial judge referenced that he had the opportunity to preside during the companion trial and found "this defendant could even be considered a principal, even though he's not pleading guilty as a principal."
Although Stephan further argues that "the mitigating factors should have had the effect of reducing the (his) sentence," he does not articulate what these mitigating factors are.
We conclude that the assignment of error regarding the failure to particularize this sentence is without merit. The trial court stated it was relying on the sentencing guidelines of La. C. Cr. P. art. 894.1. It specifically referenced the language in La. C. Cr. P. art. 894.1 A(3) when it said "this judge is persuaded that the severity of this offense warrants incarceration and that a lesser sentence would depreciate (sic) the seriousness of the defendant's actions in this case."
The trial court then stated, "Without citing any other aspects in paragraph B, the Court feels that the totality of the circumstances of this offense warrants a jail sentence and not a suspended sentence." The trial court noted that there was a death stemming from this incident and that Stephan had already received "much consideration."
On this record, there is no constitutional error. The sentence imposed is lawful. Stephan received a substantial benefit from the amended indictment. He was originally implicated in the murder, but the charges against him were reduced to attempted aggravated burglary.
Further, there was no excuse or justification for Stephan's role in this offense. Considering that the victim was killed through no provocation on his part, the sentence is neither grossly disproportionate to the severity of the chain of events nor is it shocking to our sense of justice. There is no showing of an abuse of the district court's discretion in the imposition of this sentence which, under the facts and circumstances of the case, is supported by the record and is not constitutionally excessive. These assignments of error are without merit.

CONCLUSION
The record supports the trial court's decision to render the maximum sentence of 15 years for this attempted aggravated burglary where the victim was killed in his own home when the defendant and two friends went there to get things out of the residence.
The conviction and sentence are affirmed.
AFFIRMED.