# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# 22-461

**STATE OF LOUISIANA**

**VERSUS**

**MARCEL N. DUGAR**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, DOCKET NO. 2439-21
HONORABLE CLAYTON A DAVIS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JONATHAN W. PERRY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Candyce G. Perret, Jonathan W. Perry, and Charles G. Fitzgerald, Judges.

**REVERSED AND REMANDED.**

**Megan Harwell Bitoun**
**Louisiana Appellate Project**
**Post Office Box 4252**
**New Orleans, Louisiana  70119**
**(504) 470-4779**
**COUNSEL FOR DEFENDANT/APPELLANT:**
   **Marcel N. Dugar**


**Steven C. Dwight**
**District Attorney, Fourteenth Judicial District**
**David S. Pipes**
**Assistant District Attorney**
**901 Lakeshore Drive, Suite 800**
**Lake Charles, Louisiana  70601**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
   **State of Louisiana**

**PERRY, Judge.**

Marcel N. Dugar ("Defendant") appeals his convictions for unauthorized entry of an inhabited dwelling and aggravated kidnapping of a child and the sentences imposed in connection therewith. For the following reasons, we reverse Defendant's convictions and sentences, and the matter is remanded for further proceedings.

## FACTS AND PROCEDURAL HISTORY

On January 20, 2021, the State filed a bill of information charging Defendant with one count of home invasion, a violation of La.R.S. 14:62.8, and one count of aggravated kidnapping of a child, a violation of La.R.S. 14:44.2. On June 17, 2021, Defendant appeared via audio-visual transmission while his counsel appeared in open court. Defendant sought to represent himself, but the trial court denied the request.

On September 21, 2021, a jury found Defendant guilty of the responsive verdict of unauthorized entry of an inhabited dwelling, a violation of La.R.S. 14:62.3 on count one, and guilty of aggravated kidnapping of a child. On December 1, 2021, Defendant was sentenced to six years at hard labor for the unauthorized entry conviction and thirty years at hard labor for the aggravated kidnapping of a child conviction, with the first five years of the aggravated kidnapping sentence to be served without benefit of parole, probation, or suspension of sentence. Further, the trial court ordered the sentences to run concurrent to one another, but consecutive to Defendant's pre-existing parole for an armed robbery in another parish.

## ASSIGNMENTS OF ERROR

Defendant now appeals, assigning three errors, as follows:

1. There was insufficient evidence to convict [Defendant] of aggravated kidnapping because the State's evidence did not

establish beyond a reasonable doubt that [Defendant] had the specific intent to "secret" the child.

2.  [Defendant] was denied his constitutional right to self-representation.

3.  The sentence in this case of 30 years is unconstitutionally excessive.

Because we find merit in Defendant's second assigned error, requiring reversal of his convictions and sentences, we will not consider the other errors complained of by Defendant.[1]

## APPELLANT'S ARGUMENT

In his second assignment of error, Defendant argues the trial court incorrectly denied his constitutional right to self-representation. On June 17, 2021, Defendant asked the trial court that he be permitted to represent himself. After the trial court denied his request, Defendant noted his objection for the record.

## APPELLEE'S ARGUMENT

The State's argument is that Defendant obtained the relief he really wanted, i.e., the removal of his original counsel. The State further alleges Defendant later acquiesced to representation by his subsequent counsel.

## DISCUSSION

Both briefs cite a Louisiana Supreme Court case that outlined the parameters of self-representation:

> An accused has the right to chose [sic] between the right to counsel and the right to self-representation. *State v. Strain*, 585 So.2d 540, 542 (La.1991). An accused, however, will be held to have forfeited the right to self-representation if he vacillates between self-representation and representation by counsel. *United States v. Bennett*, 539 F.2d 45, 51 (10th Cir.1976); *United States v. Frazier-El*, 204 F.3d 553 (4th Cir.), *cert. denied*, 531 U.S. 994, 121 S.Ct. 487, 148 L.Ed.2d 459 (2000). In light of the fundamental significance attached to the right to counsel, the jurisprudence has engrafted a requirement that the

---

[1] All appeals are reviewed for errors patent on the face of the record in accordance with La.Code Crim.P. art. 920; however, because we find merit in an error assigned by Defendant which requires reversal of his convictions and sentences, we will not discuss errors patent in this opinion.

assertion of the right to self-representation must be clear and unequivocal. See 3 Wayne R. LaFave, Jerold H. Israel & Nancy J. King, *Criminal Procedure* § 11.3(a)(2nd ed. 1999)(noting courts should " 'indulge in every reasonable presumption against waiver' "); *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975); *State v. Hegwood*, 345 So.2d 1179, 1181-82 (La.1977). Requests which vacillate between self-representation and representation by counsel are equivocable [sic]. *Bennett, supra.*

Whether the defendant has knowingly, intelligently, and unequivocally [sic] asserted the right to self-representation must be determined based on the facts and circumstances of each case. *See State v. Strain*, 585 So.2d 540, 542 (La.1991)(citing *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)).

*State v. Bridgewater*, 00-1529, pp. 17-18 (La. 1/15/02), 823 So.2d 877, 894, *cert. denied*, 537 U.S. 1227, 123 S.Ct. 1266 (2003).

As the State observes, Defendant filed a pro se motion to have his counsel at the time removed and to represent himself. The State contends the goal of the motion was mainly the removal of original counsel, as opposed to a desire to represent himself. However, the State acknowledges in passing that when the motion was discussed in open court, original counsel had already been removed.

Our review of the record reveals Defendant clearly maintained a desire to represent himself. At a short hearing held on June 17, 2021, Defendant was represented by attorney Andrew Casanave. At that time, Defendant rejected the State's plea offer in open court and reiterated his desire to represent himself. The following colloquy occurred:

> MR. CASANAVE [DEFENSE COUNSEL]:
> He also indicated to me that he's interested in representing himself.
>
> THE COURT:
> All right. Well, you can help Mr. Casanave, but you're not going to represent yourself.
>
> DEFENDANT:
> Well, Your Honor, can I object for the record?

3

THE COURT:
    You may, yes, sir.

DEFENDANT:
    To my self-representation?

THE COURT:
    Yes, you may.

DEFENDANT:
    I want to state that for the record.

THE COURT:
    Yes.

DEFENDANT:
    What you forfeit, Your Honor, and you told me I would be able to discuss it with you on my next court date.

THE COURT:
    Yes, sir.

DEFENDANT:
    Well, you already denied it, so I just wanted to make the objection for the record.

THE COURT:
    Yes, sir.  Thank you.

MR. [BOBBY] HOLMES [ASSISTANT DISTRICT ATTORNEY]:
    Judge, the Court has two upcoming trial dates the September 20th and the October 4th dates, but I see the Court has a conference on the 4th of October.  It says Supreme Court Fall Conference.  Are you going to that?

THE COURT:
    No. Hang on.  First of all, I have a special date for CAT, SCA, and domestic violence on July 6th.

MR. HOLMES:
    Yes, sir.  Then I think you're trying a murder on the 12th of July.

THE COURT:
    And we're trying a murder on the 12th.

MR. HOLMES:
    Yes, sir, Judge.

THE COURT:
    So would this fall on - - which category would this fall in?

4

MR. HOLMES:
Your regular division, so it would be your second week. So if we want to do the September 20th, Judge, we could set it for that date.

THE COURT:
Yes, sir, September 20th.

. . . .

DEFENDANT:
September what, sir?

MR. CASANAVE:
Twenty.

THE COURT:
Twentieth.

DEFENDANT:
September 20th. Your Honor, is there any kind of way that I could get you to reconsider for my motion because I haven't received any paperwork. This was the original, my argument, and nobody is sending me a copy of anything to aide [sic] in my defense. I'm not able to do anything.

Now today you done telling me that I'm not even able to represent myself; and I know real clear that I have a Constitutional right and I'm adequate and I have enough education to do it. I have the experience.

I done been through this before; so I'm not seeing why I'm being denied unjustly and without reason.

MR CASANAVE:
Your Honor, I will arrange to forward all his printed discovery and if we could arrange for Mr. Dugar to be transported back to Calcasieu at some reasonably soon date, I'll be happy to go over any audio and video.

THE COURT:
Well, you can put that in writing and request it and I will sign it.

Thus, the hearing arguably resulted in a hybrid-representation situation. We find it is clear that at this point, Defendant had not acquiesced to hybrid representation, as he had unequivocally asserted his right to self-representation. Further, the trial court erred by failing to assess Defendant's request to represent himself:

5

In *Faretta*, the United States Supreme Court recognized that a trial court may not force a lawyer upon a defendant when the defendant insists he wants to conduct his own defense and voluntarily and intelligently elects to proceed without counsel. However, he must ask clearly and unequivocally to proceed pro se and he must also make his request in a timely manner. *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541. Further, a defendant must be made aware of the dangers and disadvantages of self-representation so that the record demonstrates that " 'he knows what he is doing and his choice is made with his eyes open.' " *Id*, 422 U.S. at 835, 95 S.Ct. at 2541 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942)). *Faretta* made clear that the accused's "technical legal knowledge, as such, [is] not relevant to an assessment of his knowing exercise of the right to defend himself." *Id*., 422 U.S. at 836, 95 S.Ct. at 2541. In *State v. Santos*, this Court held that where a trial judge is confronted with an accused's unequivocal request to represent himself, the judge need determine only whether the accused is competent to waive counsel and is "voluntarily exercising his informed free will." *State v. Santos*, 99-1897, p. 3 (La.9/15/00), 770 So.2d 319, 321 (quoting *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541).

*State v. Brown*, 03-897, pp. 28-29 (La. 4/12/05), 907 So.2d 1, 22, *cert. denied*, 547 U.S. 1022, 126 S.Ct. 1569 (2006).

The trial court's minutes indicate that when Defendant appeared for arraignment on February 22, 2021, he was represented by Joshua Monroe. On March 11, 2021, Defendant filed his written pro se motion to strike counsel. The lawyer's name is marked out in the record. Defendant's oral request to represent himself, already mentioned, took place on June 17, 2021. Anthony Casanave represented Defendant at that hearing. In a letter to Defendant dated March 31, 2021, the court mentioned the motion to strike and stated that Ralph Williams was Defendant's counsel. Passages from the voir dire examination indicated that Williams, Casanave, and Bradley Rasile all represented Defendant. All three are public defenders in Calcasieu Parish. Thus, when the trial court ordered that he act as co-counsel with Casanave, it was effectively ordered that he act as co-counsel with all of his assigned public defenders. Therefore, the State's implication that Defendant's interactions with Williams and Rasile showed acquiescence to their

6

representation of him appears to be incorrect. We observe that when Defendant filed a pro se motion for a preliminary examination on June 24, 2021, he identified himself as "named defendant and co-counsel." We do not find this demonstrates acquiescence, as Defendant filed it only a week after the court refused to allow him to represent himself.

It is true that Defendant consulted with trial counsel before electing not to testify on his own behalf. However, we find such consultation is not inconsistent with a co-counsel situation and, thus, does not indicate acquiescence.

Our survey of the jurisprudence has revealed no case on point. Other than *Bridgewater*, a number of cases Defendant cites simply reiterate the general outlines of self-representation law. He suggests that *State v. Murray*, 19-1092 (La.App. 1 Cir. 5/11/20), 303 So.3d 655 is analogous; however, the defendant in *Murray* represented himself at trial and complained afterward that he should not have been allowed to do so. Thus, the defendant in *Murray* was in an opposite situation from Defendant herein.

Defendant also cites *State v. Batchelor*, 35,478 (La.App. 2 Cir. 5/10/02), 823 So.2d 367, *writ denied*, 02-2247 (La. 3/14/03), 839 So.2d 32, as an analogous case. The original majority opinion does appear to be analogous. However, on rehearing a majority of the panel denied relief, finding that the defendant had vacillated regarding the assertion of his right to self-representation and held the trial court correctly required him to proceed to trial with an attorney. *Id*.

The State's brief also fails to provide any analogous cases. Nonetheless, it acknowledges that an improper denial of a defendant's right to self-representation is not subject to a harmless error analysis, citing *State v. Santos*, 99-1897 (La. 9/15/00), 770 So.2d 319.

As stated earlier, the trial court's denial of Defendant's assertion of his right to represent himself was not executed properly. Further, Defendant's assertion was clear and unequivocal, and he contemporaneously objected to the court's ruling against him. Also, we note Defendant asserted his right to self-representation months ahead of trial, so it does not appear to have been a mere dilatory tactic.[2] The case now turns on whether Defendant's subsequent actions indicate that he impliedly acquiesced to being represented by counsel. We find his actions did not, even though it appears that Defendant never re-asserted his right after the initial denial, and he apparently consulted with trial counsel about the issue of whether he should testify on his own behalf. However, we find this lay defendant could logically have concluded that any reassertion of his right to self-representation would be fruitless.

In the present case, the trial court's ruling was clear in that it was not going to allow Defendant to represent himself. This conclusion suggests the convictions and sentences should be reversed. Discussing a case in which a trial court and a court of appeal had incorrectly assessed a defendant's competence to waive his right to counsel and represent himself, the supreme court stated:

> In the present case, . . . he asserted his right of self-representation unequivocally and under circumstances which precluded a finding that he was simply engaged in dilatory tactics. Other alternatives short of denying relator his Sixth Amendment right to self-representation remained open to the trial court concerned about maintaining the fairness of the proceedings. Although relator specifically requested discharge of his court appointed counsel, the trial court could have assigned the attorney or another attorney as stand-by counsel to aid relator, even over relator's objections, or to resume representation of relator if circumstances required the court to terminate his right of self-representation. *Faretta*, 422 U.S. at 834, n. 46, 95 S.Ct. at 2541; *see McKaskle v. Wiggins*, 465 U.S. 168, 187, 104 S.Ct. 944, 956, 79 L.Ed.2d 122 (1984) (stand-by counsel may participate in the trial as long as he does not "seriously undermin[e the defendant's] appearance before the jury in the status of one representing himself.").

---

[2] Motion for self-representation or for substitution of counsel not made until trial or shortly before trial are generally viewed by Louisiana court as dilatory tactics. *See, e.g., State v. Hegwood*, 345 So.2d 1179 (La.1977).

The trial court therefore erred in denying relator his Sixth Amendment right to self-representation and the error is not subject to harmless-error analysis. *Wiggins*, 465 U.S. at 177, n. 8, 104 S.Ct. at 950 ("Since the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to 'harmless error' analysis. The right is either respected or denied; its deprivation cannot be harmless.").

Accordingly, relator's conviction and sentence are reversed and this case is remanded to the district court for all proceedings consistent with the views expressed herein.

*Santos*, 770 So.2d at 321-22. Although *Santos* allows for the appointment of standby counsel, we find the trial court in the present case appointed Defendant as co-counsel to his appointed attorneys, which is a different magnitude of representation.

In light of *Santos*, we find the trial court erred by denying Defendant his Sixth Amendment right to self-representation. Thus, we find Defendant's convictions and sentences should be reversed and the case remanded for a new trial. In addition, this conclusion renders it unnecessary to consider the other errors assigned by Defendant or errors patent on the face of the record.

## DECREE

Defendant's convictions and sentences are reversed, and the matter is remanded for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**