STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

04-1658

STATE OF LOUISIANA

VERSUS

TYRONE HYPOLITE

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 04-898
HONORABLE GERARD B. WATTIGNY, DISTRICT JUDGE

**********

J. DAVID PAINTER
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and J. David Painter, Judges.

AFFIRMED AND REMANDED.

G. Paul Marx
P. O. Box 82389
Lafayette, LA 70598-2389
Counsel for Defendant-Appellant:
　　Tyrone Hypolite

Hon. J. Phillip Haney
300 Iberia Street, Suite 200
New Iberia, LA 70560
Counsel for Appellee:
　　State of Louisiana

William Jarred Franklin
3001 Old Minden Road
Bossier City, LA 71112
Counsel for Defendant-Appellant:
　　Tyrone Hypolite

Jeffrey J. Trosclair
Courthouse, 5th Floor
Franklin, LA 70538
Counsel for-Appellee:
　　State of Louisiana

Tyrone Hypolite
3571 Lauderdale Woodyard Rd.
Kinder, LA 70648
　　Pro Se

**PAINTER, Judge.**

The Defendant, Tyrone Hypolite, appeals his conviction for armed robbery and the sentence imposed in connection therewith. We affirm.

FACTS

In the early morning hours of May 3, 2004, Tracy Chatman of New Iberia was returning from an evening out with a friend. After her friend dropped her off in front of her apartment complex, she walked to her car to retrieve some items. As she was doing so, an unknown man, later identified as Hypolite, passed by and asked her how she was doing. A short time later, as she was leaving the car, he returned and grabbed her, threatened her with a screwdriver, and demanded her car keys. When she complied, he released her, and she ran to her apartment.

According to the victim, her assailant started the car, leaving the headlights off, and sped away. Within about a minute of being dispatched, the police spotted the stolen car just a few blocks from the crime scene. The front end of the car was damaged, with radiator fluid leaking onto the road, but Hypolite again sped off. The chase ended quickly, because Hypolite soon ran off the road and into a house, knocking down the porch and totaling the car. He would not comply with officers' commands to exit the vehicle. The two officers at the crash site had to physically remove him from the car, and Hypolite struggled with them as they did so. At some point, a State Trooper arrived to assist. As the officers worked to bring Hypolite under control, a screwdriver fell from one of his front pockets, then he fell on top of it on the ground near the car. The officers eventually subdued him and placed him under arrest.

On May 27, 2004, the State filed a bill of information charging Hypolite with armed robbery, a violation of La.R.S. 14:64. The bill included seven other charges,

1

but the State tried him for armed robbery alone. On August 26, 2004, a jury found him guilty of armed robbery. On October 1, 2004, the court sentenced Hypolite to thirty-five years at hard labor. On the same date, Hypolite made an oral motion to reconsider sentence, which the court immediately denied.

Hypolite now appeals his conviction and sentence, assigning three errors.

ERRORS PATENT

We find one error patent on the face of the record as a result of our review pursuant to La.Code Crim.P. art. 920.

Seven of the counts charged in the bill of information have not been properly disposed of. La.Code Crim.P. art. 819 provides: "If there is more than one count in an indictment, the jury must find a verdict as to each count, unless it cannot agree on a verdict as to a count." Hypolite was originally charged with eight counts: 1) armed robbery; 2) public intimidation; 3) reckless operation of a vehicle; 4) resisting an officer; 5) aggravated flight from an officer; 6) hit and run driving; 7) a violation of the requirement of two functional headlights; and, 8) driving without a license. At trial, the clerk read only count one, armed robbery, and the jury returned a verdict as to that count only. This court submitted an information request asking for "[a]ny motion, minute entry, order or amended bill concerning the disposition of Counts 2-8 charged in the Bill of Information . . . ." In response, the Deputy Clerk of Court for Iberia Parish submitted an affidavit stating that she had examined the record and had not found an amended bill of information. Therefore, the record before this court contains no evidence that counts two through eight have been disposed of.

This court addressed a similar issue in *State v. Davis*, 614 So.2d 270, 275 (La.App. 3 Cir.), *writ granted*, 626 So.2d 1180 (La.1993), *rev'd on other grounds*, 93-0599 (La. 4/11/94), 634 So.2d 1168. The court stated:

2

The record indicates a possible error patent regarding the number of verdicts returned by the jury. Defendant was indicted on three counts of malfeasance in office and one count of injuring public records, but a verdict was returned only as to one count of malfeasance in office. A motion to sever offenses was filed by the State on February 14, 1991, with the State arguing that count two should be tried separately. On May 13, 1991, the court ordered the defendant to show cause on May 15, 1991 as to why the motion should not be granted. The court minutes of May 15, 1991 failed to show whether the court ruled on this motion. At trial, only count two was read to the jury. The record does not show the disposition of the other counts.

La.C. Cr.P. art. 819 provides:

> If there is more than one count in an indictment, the jury must find a verdict as to each count, unless it cannot agree on a verdict as to a count.

> We will therefore remand the case for a determination of whether the motion to sever was granted and, if not, for a proper disposition of the remaining charges.

No motion to sever was filed by the State in the present case. Accordingly, this court will remand the present case for a proper disposition of counts two through eight. *See also State v. Pitre*, 04-1134 (La.App. 3 Cir. 2/9/05), 893 So.2d 1009; *State v. James*, 99-1858 (La.App. 3 Cir. 5/3/00), 761 So.2d 125, *writ denied*, 00-1595 (La. 3/23/01), 787 So.2d 1010; and *State v. Cash*, 03-853 (La.App. 3 Cir. 12/10/03), 861 So.2d 851, *writ denied*, 04-0027 (La. 4/30/04), 872 So.2d 472, and 04-0232 (La. 5/7/04), 872 So.2d 1080, where this court has remanded cases for the disposition of charges.

SUFFICIENCY OF THE EVIDENCE

Hypolite argues that the evidence adduced at trial was insufficient to support his conviction for armed robbery. The analysis for insufficiency claims is well-established:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact

3

could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

The elements of armed robbery are found in La.R.S. 14:64, which states, in pertinent part: "Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon."

At trial, the victim, Ms. Chatman, testified to the version of events set out above.

On appeal, Hypolite argues that the victim allowed him to use her car in exchange for illegal drugs; this was his testimony and part of his closing argument at trial. He also argues that the State failed to prove that the screwdriver used in the robbery was the same screwdriver found at the scene of the crash and arrest. Hypolite did not make this specific argument to the jury, although it could be considered to be a part of his argument that there was no robbery at all.

Hypolite took the stand in his own defense and claimed that on the night at issue, Ms. Chatman approached him and offered to "rent" her car to him in exchange for illegal drugs. He testified that he fled from police because he "was swallowing narcotics," and because he had no driver's license.

4

The question of whether an armed robbery occurred, or whether Ms. Chatman voluntarily allowed Hypolite to use the car, is essentially one of credibility. As mentioned in *Kennerson*, credibility assessments are within the province of the fact-finder, in this case the jury. A jury may "accept or reject, in whole or in part," any witness's testimony. *State v. Silman*, 95-0154, p. 12 (La. 11/27/95), 663 So.2d 27, 28. Clearly, the jury believed the victim's version of events, and Hypolite's brief offers no concrete reason why the jury's conclusion should be considered unreasonable. This court will overturn a jury's credibility assessment only when a witness's own testimony demonstrates that the witness's ability to perceive events was impaired in some way. *See, e.g., State v. Bourque*, 94-291 (La.App. 3 Cir. 11/2/94), 649 So.2d 670, wherein one eyewitness had consumed a large amount of alcohol before the offense and the other was a minor who believed all white men looked alike, and defendant was white.

In the present case, there was no indication that Ms. Chatman was unable to objectively perceive events, although during cross-examination she testified that she had consumed two twenty-two-ounce beers while visiting her friend's house earlier in the evening. It was not clear exactly when, or over what a period, she drank the beers. The testimony did not indicate that she was intoxicated, or otherwise unable to objectively perceive events, at the time of the offense.

Hypolite argues that there was a discrepancy in the victim's testimony. At trial, she stated that she had gotten out of her car and was walking up the sidewalk toward her apartment when Hypolite robbed her, but in a pre-trial statement to police, she indicated that she was still beside the car when he robbed her. This point is unpersuasive for a number of reasons. Most importantly, this alleged discrepancy was not brought out in the trial testimony; Hypolite cites a detective's "Affidavit of

5

Warrant for Arrest," which was not introduced as a trial exhibit. Because this portion of Hypolite's argument relies upon material that is not part of the trial record, it will not be considered by this court.

Hypolite's overall credibility argument intersects with his argument regarding the screwdriver used in the offense. While contending that the State failed to prove he was armed with a screwdriver, Hypolite notes that the victim was unable to conclusively state that the screwdriver found at the site of Hypolite's crash and arrest was the screwdriver used to threaten and rob her. At trial, the victim acknowledged that she did not see the screwdriver's handle during the offense. In his brief, Hypolite notes the circumstantial evidence rule codified in La.R.S. 15:438: "The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence."

The victim testified that Hypolite threatened to stab her with a screwdriver, to facilitate the robbery. The victim's testimony constituted *direct* evidence and would have been sufficient to support the conviction on its own, even if no screwdriver had been recovered. *State v. Byrd*, 540 So.2d 1110 (La.App. 1 Cir.), *writ denied*, 546 So.2d 169 (La.1989). Also, when officers pulled Hypolite from the car, one of them, Ivan McIntire, saw a screwdriver fall from one of Hypolite's front pockets. It was recovered and entered into evidence. Further, only a short time, possibly as little as ten or fifteen minutes, elapsed between the time of the robbery and Hypolite's arrest, which occurred within a few blocks of the scene of the robbery. Therefore, it would not have been unreasonable for the jury to conclude that the screwdriver seen on Hypolite's person a short time and distance from the robbery was the screwdriver used as a weapon to facilitate the taking of Ms. Chatman's car. Also, the presence of

6

the screwdriver on Hypolite's person in the stolen car bolsters Ms. Chatman's credibility regarding the incident.

For these reasons, the jury was not unreasonable in crediting the victim's testimony over Hypolite's, or in finding that he committed an armed robbery. Therefore, we find that the evidence adduced at trial was sufficient to support the conviction for armed robbery.

SELF-REPRESENTATION

Hypolite also argues that the trial court erred by denying him his constitutional right to represent himself. He argues that the court applied the wrong standard in denying his motion for self-representation.

In support of his position, Hypolite cites *State v. Santos*, 99-1897, p. 3 (La. 9/15/00), 770 So.2d 319, 321, in which the supreme court explained:

> A trial judge confronted with an accused's unequivocal request to represent himself need determine only whether the accused is competent to waive counsel and is "voluntarily exercising his informed free will." *Faretta* [*v. California*, 422 U.S. 806, 95 S.Ct. 2525] 422 U.S. at 835, 95 S.Ct. at 2541. In this context, "the competence that is required of a defendant seeking to waive his right to counsel is the competence to waive the right, not the competence to represent himself." *Godinez v. Moran*, 509 U.S. 389, 399, 113 S.Ct. 2680, 2687, 125 L.Ed.2d 321 (1993) (footnote omitted).
>
> In the present case, the trial court and court of appeal therefore erred in assessing relator's competence to waive counsel according to a standard appropriate for measuring the competence of counsel against professional norms. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

In the present case, the "*Faretta* Hearing" was not held until the State was about to call its final witness in its case-in-chief. In proceedings conducted outside the presence of the jury, the court questioned Hypolite with regard to his ability to represent himself. Upon being asked by the court whether he understood that he did not know how to try a case, Hypolite responded that it "shouldn't be too hard."

7

Hypolite stated that he felt he could represent himself, in spite of being informed of the complexities of trying cases. He asserted that he needed to represent himself because his lawyers would not ask the questions he wanted asked. Hypolite opined that all it would take to represent himself would be common sense. The court denied the request stating that:

> You're not prepared to represent yourself. You have shown no indication to me that you have experience in being in court to watch cases. You have no experience in being tried before. You disagree with your lawyers about some things, so you think you're going to represent yourself. And then of course after you represent yourself and if you get convicted, you're going to complain because you weren't capable of representing yourself. And in my opinion, you're not capable of representing yourself. I deny your request to represent yourself. Have a seat.

It appears that the trial court did not apply the appropriate standard in evaluating Defendant's motion as set out in *Santos*. However, as the State points out, the present case is be distinguishable from *Santos*, because Hypolite did not move to represent himself until the State had nearly completed its case-in-chief. He had made earlier attempts to have his two appointed attorneys dismissed, but appeared to want new counsel appointed. Hypolite did not unequivocally move to represent himself until the middle of the trial.

In arguing an oral motion to dismiss his attorneys, made earlier in the trial, Hypolite stated to the court, "I need a new lawyer to represent me because the lawyer I have said I'm guilty already." This was not a request to represent himself since Defendant's language shows he was asking for new counsel.

The State cites *State v. Bridgewater*, 00-1529, pp. 19-20 (La.1/15/02), 823 So.2d 877, 895, *modified on rehearing*, 00-1529 (La. 6/21/02), 823 So.2d at 909, *cert. denied*, 537 U.S. 1227, 123 S.Ct. 1266 (2003), which explained that:

Substantively, defendant's request to represent himself was not an unequivocal one; rather, it was an obfuscated request to substitute appointed counsel because of his disagreement with current counsel's choice of trial strategy. Addressing a similar request, the federal court in [*U.S. v.*] *Frazier-El* [204 F.3d 553 (4th Cir.), *cert. denied*, 531 U.S. 994, 121 S.Ct. 487 (2000)], *supra*, reasoned:

> A trial court must be permitted to distinguish between a manipulative effort to present particular arguments and a sincere desire to dispense with the benefits of counsel. The circumstances surrounding Frazier-El's purported waiver of his right to counsel and the assertion of his right to proceed without counsel in this case suggest more a manipulation of the system than an unequivocal desire to invoke his right of self-representation. Taking the record as a whole, we are satisfied that the district court was justified, when confronted with Frazier-El's vacillation between his request for substitute counsel and his request for self-representation, in insisting that Frazier-El proceed with appointed counsel.

204 F.3d at 560 (internal citations omitted).

Although the defendant argues that this Court's decision in *State v. Santos*, 99-1897 (La.9/15/00), 770 So.2d 319, is controlling, that case is easily distinguishable. In *Santos*, *supra*, the defendant made an unequivocal request to discharge his court-appointed counsel and to represent himself, explaining that he feared "'the Indigent Defender Board is working with the police of St. Bernard Parish to keep me here.'" 99-1897 at p. 3, 770 So.2d at 321. Unlike the defendant in *Santos* who was convinced that no public defender could serve his interests, in this case defendant specifically stated that it was current counsel with whom he was dissatisfied. Two other factors we relied upon in *Santos* were that the defendant (i) unequivocally asserted his right to represent himself, and (ii) made that request "under circumstances which precluded a finding that he was simply engaged in dilatory tactics." 99-1897 at p. 4, 770 So.2d at 322. Neither factor is present here.

First, defendant's request was not clear and unequivocal; rather, defendant's request was, like in *Frazier-El*, *supra*, "a manipulative effort to present particular arguments" and vacillated between self-representation and representation by counsel. Second, given that defendant raised similar arguments before (a point discussed below) and that he sought a continuance on the eve of trial, this clearly could be characterized as a "dilatory tactic."

The *Bridgewater* court also found that the trial judge applied the correct legal standard to the defendant's request to represent himself. It explained that the lower court considered matters bearing upon the defendant's competence to waive, even though it also noted factors related to his competence to represent himself. *Id.* In this regard, *Bridgewater* is distinguishable from the present case. However, *Bridgewater* also demonstrates an independent basis for rejecting Hypolite's claims. That basis, the dilatory and manipulative nature of the motion, found in both *Bridgewater* and this case, distinguishes both of them from *Santos*.

The *Santos* court observed that a defendant's right to self-representation is entitled to great respect and protection from the courts, stating:

> The trial court therefore erred in denying relator his Sixth Amendment right to self-representation and the error is not subject to harmless-error analysis. [*McKaskle v.*] *Wiggins*, [465 U.S. 168, 104 S.Ct. 944, (1984)] 465 U.S. at 177, n. 8, 104 S.Ct. at 950 ("Since the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to 'harmless error' analysis. The right is either respected or denied; its deprivation cannot be harmless.").

*Santos*, 770 So.2d 319,322.

However, under *Bridgewater*'s reasoning, a defendant's attempt to use the right to self-representation as a tool of delay or manipulation puts him outside the protections afforded to genuine attempts to assert the right. This is a long-standing principle in Louisiana jurisprudence. *See, e.g.*, *State v. Hegwood*, 345 So.2d 1179 (La.1977).

As noted earlier, Hypolite did not move to represent himself until the State's case-in-chief was nearly complete. Therefore, the timing of the request indicates that it was merely a delay tactic. Much like the defendant in *Bridgewater*, Hypolite made earlier attempts to obtain *substitute* counsel, apparently due to disagreements

10

regarding trial strategy. However, he did not clearly ask to represent himself until the State was about to call its last witness in its case-in-chief. As a result, his request appears to be "a manipulative effort to present particular arguments" rather than "a sincere desire to dispense with the benefits of counsel." *Bridgewater*, 823 So.2d 877, 895, *quoting U.S. v. Frazier-El*, 204 F.3d 553, 560 (4th Cir.), *cert. denied*, 531 U.S. 994, 121 S.Ct. 487 (2000). Therefore, we find no error in the trial court's refusal to allow Hypolite to represent himself.

EXCESSIVE SENTENCE

Finally, Hypolite argues that his thirty-five year sentence was excessive. This court has explained that:

> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*State v. Barling*, 00-1241, 01-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331.

In the present case, the trial court gave the following reasons for its sentence:

> At the time of the trial, [Hypolite] got up and lied and said that the victim was trying to get drugs from him and rent her car to him for drugs, which was an obvious and protracted lie which this court did not believe and which the jury did not believe. He has indicated no remorse for the commission of this crime, has not made any apology or statement

to the state or to the victim for having put the victim through what she has been through.

He has a prior conviction in 1998 for which he was sentenced to seven years at hard labor, Docket Number 98-1600 of the Iberia records. I think after he was picked up for this matter, he was revoked on that probation or parole.

Subsequently, in 2001, he was convicted of simple burglary and simple battery in the New Iberia City Court and received ten days; and then subsequently was involved in this matter, for which he appears today for sentencing.

There is an undue risk that during the period of a suspended sentence or probation the defendant would commit another crime, as he has committed crimes in the past.

The defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution.

A lesser sentence than the court gives would deprecate the seriousness of his crime.

The offender's conduct during the commission of the offense manifested deliberate cruelty to the victim when he threatened her with serious injury with the screwdriver.

The offender used threats of actual violence in the commission of his crime.

The offender used a dangerous weapon in the commission of the offense.

And of course the offense is a crime of violence.

We also consider that the victim has been seriously impacted in his matter. She and her children had the benefit of her vehicle, which she had worked long and hard for and saved the money to purchase. The defendant of course stole her vehicle at the time of the incident and wrecked it, and it's a total. So she no longer has the use of her automobile and has to go through her daily life now without the use of an automobile, requiring her to work and to get to and from work on foot and to have to go on foot for all of the other necessities that she needs for she and her children.

She's also indicated of course that she is frightened. She lives in an area where there are African American males; and every time she

12

sees an African American male now, she is afraid because of the incident that she had with the defendant.

So, for all of these reasons, the court feels that this defendant is a serious threat of violent crimes to this community and that his prior actions have indicated his lack of remorse for the crimes he has committed, his lack of remorse for this crime.

It's the sentence of this court that you serve 35 years at hard labor. I give you credit for time served. This sentence will be without benefit of parole, probation, or suspension of sentence. The sentence will be concurrent with the other sentence that you are serving.

The sentencing range for armed robbery is between ten and ninety-nine years. Hypolite's sentence is in the lower half of the scale of possible sentences. Louisiana courts have approved sentences between thirty-five and fifty years for *first* offenders. *State v. Smith*, 01-2574 (La. 1/14/03), 839 So.2d 1. Since Hypolite is a repeat offender, we cannot say that the lower court abused its discretion in sentencing him.

CONCLUSION

For these reasons, the conviction and sentence are affirmed. This case is remanded for disposition of counts two through eight of the bill of information filed by the State.

AFFIRMED AND REMANDED.