Judgment rendered April 22, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 53,405-KA
No. 53,406-KA
No. 53,407-KA
(Consolidated Cases)

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                                    Appellee

versus

DOUGLAS SCOTT HOLLEY                                  Appellant

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 216315

Honorable Allen Parker Self, Jr., Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By: Peggy J. Sullivan

JOHN SCHUYLER MARVIN                    Counsel for Appellee
District Attorney

JOHN MICHAEL LAWRENCE
RICHARD RUSSELL RAY
Assistant District Attorneys

* * * * *

Before MOORE, STONE, and McCALLUM, JJ.

**STONE, J.**

In this criminal case, Douglas Holley ("Holley") was found guilty as charged of two counts of attempted first degree murder; two counts of manufacture or possession of a bomb; and one count of aggravated arson. He was sentenced to a cumulative term of 105 years of imprisonment at hard labor, 92 years of which were without benefit of probation, parole, or suspension of sentence. Holley now appeals his convictions and sentences.

For the reasons stated hereinafter, his convictions for attempted first degree murder are reduced to convictions for attempted second degree murder, and his remaining convictions are affirmed. The sentences for manufacture or possession of a bomb are hereby modified to delete the restriction of benefits. His remaining sentences are affirmed.

### FACTS

The victims in this case, Robert Hewlett and Tracy Hewlett, own and operate a horse farm. Additionally, Robert Hewlett is a veterinarian ("Dr. Hewlett"). For several years preceding the incident, Holley was the groundskeeper for the Hewletts' farm, and he lived in a rent house on the Hewlett property. The Hewletts trusted Holley – he had access to their home when they were away and had access to all of the farm. Holley even celebrated Christmas and Thanksgiving with the Hewletts.

Holley owned a horse named Charlie; she lived in a fenced area near his rent house. Charlie became sick with colic, and Dr. Hewlett advised that he could not help Charlie and suggested that euthanasia would be best for her. After Charlie's death, Holley spiraled into an enduring, vengeful rage toward Dr. Hewlett, blaming him for Charlie's suffering and death.

Holley plotted an elaborate vengeance against Dr. Hewlett for this perceived wrongdoing. Holley manufactured two pipe bombs, which included fishing weights as shrapnel for additional lethality. While the Hewletts were away from home he planted them under the subfloor of the Hewletts' pier and beam home, directly under the Hewletts' bed. When the Hewletts arrived home, on December 19, 2015, Holley waited until 3:00 AM – a time when he figured they would be in bed. Holley was correct. The Hewletts were in bed, and Holley remotely detonated the two pipe bombs. The blast made a hole through the floor of the Hewletts' bedroom and through the box spring of their bed. Miraculously, however, the high-density foam mattress protected the Hewletts from the blast; they were thrown out of the bed but physically unharmed. Ms. Hewlett, however, later received counseling for posttraumatic stress disorder and anxiety.

The investigation quickly revealed that bombs had caused the explosion in the Hewletts' bedroom. Shrapnel was found embedded in objects throughout the Hewletts' bedroom. Shrapnel had even made holes in the plumbing pipes beneath the Hewletts' bedroom floor. Remnants of the bombs, including pieces of galvanized steel, exploded PVC pipe, deformed aluminum sheet metal, wire pieces with alligator clips attached, a modified extension cord with hot glue on it, burnt black electrical tape, and a destroyed timer were discovered at the blast site. Items recovered from the blast site tested positive for triacetone triperoxide ("TATP"), a type of primary high explosive.

Holley's rent house was searched and was found to contain a plethora of bomb-making materials which were consistent with those recovered from the blast site. Holley's cell phone revealed that he had researched bomb-

making, and had taken pictures of his bombs and bomb-making materials. Holley's diary and cell phone contained notes wherein he detailed Charlie's sickness and death, and his gruesome, murderous intentions toward Dr. Hewlett.

Holley admitted in the videotaped interview that he had previously worked on the insulation underneath the Hewletts' home, that he held Dr. Hewlett responsible for Charlie's death, and wanted revenge. He also admitted that he used his cell phone to research bombs, rocket igniters, and various bombing events.

Holley was arrested for the bombing, and the prosecution filed numerous charges against him, including those on which he has been convicted. On March 28, 2018, Holley moved to dismiss the public defender appointed to represent him. Holley stated that after discussing the merits of his case with his appointed attorney, he did not feel that the attorney would "argue and fight for him." The trial court ascertained that Holley was 56 years old and had completed high school, but had no legal education or training and had never represented himself in court before. Holley confirmed that he could read, write, and speak the English language, and was not under the influence of drugs or alcohol. Holley stated that he understood the nature of the charges against him, and the penalties. Holley also stated that he understood that he would be "extremely disadvantaged" by his lack of legal knowledge and experience and admitted that he knew nothing about criminal prosecutions or trial and had no access to a law library. Despite acknowledging these disadvantages, Holley maintained that he felt as though he had no choice but to represent himself.

The trial court emphasized that Holley would be held to the same standard as attorneys and that the trial court was not permitted to give him legal advice or assistance. The trial court strongly urged Holley not to represent himself, but found that Holley had freely and voluntarily decided to waive his right to counsel and represent himself at trial. The trial court appointed an attorney to serve as standby counsel in the event Holley had any legal questions.

Trial began June 20, 2018. Holley declined the state's offer of a 40-year agreed sentence in exchange for a plea of guilty as charged to all five counts. Trial continued with the presentation of testimony and evidence.

The jury returned a verdict of guilty as charged on five counts. Neither side requested polling. The trial court ordered a presentence investigation report.

At sentencing, the trial court reviewed Holley's personal, educational, and criminal history, noting that he was a first-felony offender who was gainfully employed with the Hewletts for several years. The trial court noted the general facts and evidence of this case, specifically that Holley was angry after his horse's death and sought revenge for his loss by manufacturing and detonating two bombs in an attempt to murder Robert and Tracy Hewlett. The trial judge noted that Holley's personal comments made in his private "diary" entries were chilling and frightening and stated his belief that the Hewletts would never be safe. The trial judge stated that, after considering the evidence presented at trial and the information in Holley's presentence investigation report, he concluded that it was necessary to remove Holley from normal society.

For the attempted first degree murders of Robert Hewlett and Tracy Hewlett, Holley was sentenced to serve consecutive sentences of 45 years at hard labor, without benefit of probation, parole, or suspension of sentence. For the two counts of manufacture or possession of bomb, Holley was sentenced to serve concurrent sentences of 15 years at hard labor, without benefit of probation, parole, or suspension of sentence. The trial court ordered that these sentences will run concurrently to the sentences for attempted murder. For aggravated arson, Holley was sentenced to serve 15 years at hard labor, with 2 years to be served without benefit of probation, parole, or suspension of sentence, and, a $10,000.00 fine. The trial court ordered that this sentence is to run consecutively to the sentences for attempted murder.

## DISCUSSION

**Double jeopardy**

Holley argues that he suffered a double jeopardy violation because the state prosecuted him for both felony murder based on aggravated arson and for the underlying felony of aggravated arson. In opposition, the state argues that the bill charged Holley with attempted first degree murder based on two independent aggravating factors – aggravated arson and the killing of more than one person – so the state could prove either one to reach a conviction. The state argues that there was no double jeopardy violation because the evidence was sufficient to establish that Holley acted with specific intent to kill more than one person, and thus the alternative aggravating factor (aggravated arson) was unnecessary for a proper conviction. The prosecution also argues that Holley waived his right to claim double jeopardy by failing to assert it in a timely motion to quash.

5

Holley was charged with attempted first degree murder pursuant to La. R.S.14:30 and La. R.S.14:27. First degree murder includes the killing of a human being with the specific intent to kill two or more persons. La. R.S.14:30(A)(3). First degree murder also includes the killing of a human being with specific intent to kill while engaged in aggravated arson. La. R.S.14:30(A)(1). Either way, the penalty for first degree murder is mandatory life in prison without probation, parole, or suspension of sentence (unless the prosecution seeks and obtains the death penalty). The prosecution did not and could not seek the death penalty in this case because there was no actual murder, merely attempted murder. Second degree murder includes the killing of a human being with the specific intent to kill. La. R.S.14:30.1 (A)(1). The penalty for second degree murder is mandatory life in prison without parole, probation, or suspension of sentence. The relevant provision of the attempt statute provides the same exact penalty for attempted first degree murder and attempted second degree murder, as follows:

> [I]f the offense so attempted is punishable by…life imprisonment, he shall be imprisoned at hard labor for not less than 10 nor more than 50 years without benefit of parole, probation, or suspension of sentence.

La. R.S. 14:27(D)(1)(a).

The Federal Constitution and the Louisiana Constitution prohibit placing a person twice in jeopardy for the same offense. U.S. Const. Amend V; La. Const. art. I, § 15; La. C. Cr. P. art. 591; *State v. Hardyway*, 52,513 (La. App. 2 Cir. 2/27/19), 266 So. 3d 503, 512, *writ denied*, 19-00522 (La. 10/21/19), 280 So. 3d 1156. The guarantee against double jeopardy provides three central constitutional protections: (1) protection against a

second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense. *State v. Crandell,* 05-1060 (La. 3/10/06), 924 So. 2d 122.

In *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), the U.S. Supreme Court set out a precise rule of law to determine whether a double jeopardy violation has occurred. "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether *each* of [the statutes that define a crime charged] requires proof of a fact which the other does not." *Blockburger v. United States, supra.* (Emphasis added). Louisiana's separate "same evidence" test is no longer used in determining whether a double jeopardy violation exists. *State v. Frank*, 16-1160 (La. 10/18/17), 234 So. 3d 27.

Double jeopardy bars separate punishment of lesser included offenses once the defendant is convicted of the greater offense. *State v. Price,* 39,582 (La. App. 2 Cir. 3/23/05), 899 So.2d 633. The double jeopardy clause prohibits prosecution for both a felony murder and the underlying felony. *State v. Thomas*, 50,929 (La. App. 2 Cir. 8/10/16), 201 So. 3d 263, 278, *writ denied*, 16-1642 (La. 9/6/17), 224 So. 3d 980. To remedy a violation of double jeopardy, the reviewing court normally vacates the conviction and sentence of the less severely punishable offense, and affirms the conviction and sentence of the more severely punishable offense. *Price, supra.*

In *Thomas*, *supra*, cited by the defense, this Court found that the prosecution for second degree felony murder and the underlying felony of

aggravated burglary constituted a double jeopardy violation because there was insufficient evidence to support a finding of second degree murder based on specific intent. *Id.* In *State v. Hardyway*, *supra*, the defendant was charged with attempted first degree murder, based on armed robbery, and separately, armed robbery. The bill of information and the jury instructions listed only the enumerated felony of armed robbery to support the offense for attempted first degree murder, thereby making armed robbery a required element of the offense. This Court held that because the armed robbery provided the *sole* basis for the attempted first degree murder conviction, the prosecution and conviction for both felonies constituted a double jeopardy violation.

*Apprendi v. New Jersey,* 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), held that the Sixth Amendment right to a jury trial requires that every fact which is essential to the punishment imposed upon the defendant (other than prior convictions) must be proven to a jury beyond a reasonable doubt, as reflected by the verdict. In *Apprendi*, the defendant was convicted of a crime which carried a sentencing range of 5 to 10 years. After the conviction, but before sentencing, the prosecution moved under the New Jersey hate crime law to increase the penalty range to 10 to 20 years. The New Jersey procedure for sentencing enhancement under the hate crime statute allowed the matter to be tried by a judge, and prescribed a preponderance of the evidence burden of proof. The United States Supreme Court found this scheme unconstitutional because it deprived Apprendi of his Sixth Amendment right to have the jury determine whether or not the State had proven (beyond a reasonable doubt) his violation of the hate crime

8

statute, *a fact which if so proven would increase the limits of the applicable sentencing range.*

In this case, Holley was charged with attempted first degree murder in that he attempted to kill a human being: (1) with specific intent to kill while engaged in aggravated arson; and/or (2) with the specific intent to kill more than one person. The verdict forms for each count of attempted first degree murder, which are contained in the record, do not specify whether the jury found Holley guilty on each count of attempted first degree murder by reason of his specific intent to kill while engaged in aggravated arson, his specific intent to kill more than one person, or both. Accordingly, *the verdict form does not preclude the possibility that the jury found Holley guilty of attempted first degree murder **only** by reason of his specific intent to kill while engaged in aggravated arson*. This, coupled with the fact that Holley was also convicted and sentenced for aggravated arson, clearly creates the possibility that Holley's convictions for attempted first degree murder and aggravated arson violated the prohibition against double jeopardy. Thus, given Holley's aggravated arson conviction, the combination of Holley's jury trial and double jeopardy rights requires that, for a valid conviction of attempted first degree murder, the jury verdict had to state or necessarily imply that the jury found that Holley had the specific intent to kill more than one person. U.S. Const. Amend. V & VI; *Crandell, supra*; *Apprendi, supra.* The jury verdict form did not do so.

The state contends that we should nonetheless affirm Holley's convictions and sentences for both attempted first degree murder and aggravated arson because the evidence was sufficient to support a jury verdict for attempted first degree murder based on specific intent to kill

9

more than one person.  Doing so would violate Holley's Sixth Amendment right to a jury verdict finding each essential element of the offense proven beyond a reasonable doubt.  *Apprendi, supra.*

The prosecution also argues that Holley waived the right to claim double jeopardy by failing to do so in a timely motion to quash.  This argument is without merit because double jeopardy is a "jurisdictional defect," and therefore cannot be waived even via unqualified guilty plea. *State v. Dubaz,* 468 So.2d 554 (La. 1985).  If the defendant cannot waive double jeopardy via unqualified guilty plea, he cannot waive it by pleading not guilty but failing to raise the issue in a timely motion to quash.

However, we find that the protection against double jeopardy and the right to a jury verdict on each element of the offense, in this case, can be satisfied without reversing any of Holley's convictions, but instead reducing his convictions for attempted first degree murder to attempted second degree murder.

As charged in Holley's amended bill of indictment, attempted second degree murder is a lesser included offense of attempted first degree murder. Therefore, the jury's verdict finding Holley guilty of attempted first degree murder necessarily included findings that the prosecution proved beyond a reasonable doubt every element of attempted second degree murder, *without* necessity of a finding of aggravated arson.  Moreover, the punishment for attempted second degree murder and attempted first degree murder is exactly the same: 10 to 50 years of imprisonment at hard labor without probation, parole, or suspension of sentence. La. R.S. 14:27(D)(1)(a). Accordingly, we reduce Holley's convictions for attempted first degree

10

murder to convictions for attempted second degree murder. Holley's sentencing exposure remains completely unchanged.

**Waiver of right to counsel**

Holley's appellate counsel acknowledges that Holley had a right to self-representation and that the trial court advised Holley of the dangers and disadvantages of self-representation, but asserts that Holley did not really want to represent himself. During the *Faretta* hearing, Holley stated his feelings that he had no choice because, after conversations with his appointed counsel, he did not feel that the court-appointed attorney was going to advocate for him in the manner that Holley desired. *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). The state argues that the record shows that the trial court conducted a proper hearing regarding Holley's request to represent himself and that nothing in the record shows that the trial court forced Holley to represent himself.

A defendant may waive his or her Sixth Amendment right to counsel. For the waiver to be valid, the defendant must: (1) know of the right to counsel; and (2) knowingly and intelligently relinquish it by a clear and unequivocal waiver. *Faretta v. California*, *supra*; *State v. Mingo*, 51,647 (La. App. 2 Cir. 9/27/17), 244 So. 3d 629, 638, *writ denied*, 17-1894 (La. 6/1/18), 243 So. 3d 1064. The defendant must be made aware of the dangers and disadvantages of self-representation. *Id.* The trial court must determine whether the defendant is competent to waive counsel and is voluntarily exercising informed free will. *Faretta v. California*, *supra*, 422 U.S. at 835, 95 S. Ct. at 2541; *State v. Santos*, 99-1897 (La.9/15/00), 770 So. 2d 319, 321.

11

The trial court's colloquy with the defendant in determining the validity of a waiver of the right to counsel is not required to follow a particular formula. *State v. Leger*, 05-0011 (La. 7/10/06), 936 So. 2d 108, 147-48, *cert. denied*, 549 U.S. 1221, 127 S. Ct. 1279, 167 L. Ed. 2d 100 (2007). Whether the waiver of right to counsel was knowingly made depends on the facts and circumstances of the case, including the defendant's background, experience, and conduct. *Id.* There must be a showing of clear abuse of discretion for a trial court's ruling on a defendant's right to counsel to be upset, as the trial court had the opportunity to observe the defendant in court appearances and motions, and was familiar with the defendant. *State v. Johnson*, 52,965 (La. App. 2 Cir. 9/25/19), 280 So. 3d 1245, 1250; *State v. LaGarde*, 07-288 (La. App. 5 Cir. 10/30/07), 970 So. 2d 1111, 1120, *writs denied*, 07-1650 (La. 5/9/08), 980 So. 2d 684 and 07-2412 (La. 5/16/08), 980 So. 2d 706.

In this case, the trial court ascertained Holley's age and education and discussed his understanding of the serious nature of the charges and penalties that Holley faced. Also, the trial court thoroughly explained the disadvantages that Holley would face in self-representation against the state's attorneys, and that the court would not give Holley any legal advice. Holley acknowledged that he had no legal education or training, had no access to legal resources, and had no understanding of the legal process. Holley also acknowledged that he would be held accountable as any trained lawyer for understanding the rules and procedures of the trial process. Throughout the hearing, Holley repeatedly expressed his feeling that he must represent himself.

This record demonstrates that Holley made an unequivocal request to represent himself at trial and that the trial court conducted an extensive colloquy with Holley about his understanding of the dangers and disadvantages of self-representation for these serious charges and penalties. On this record, there is no showing that the trial court abused its discretion in finding that Holley knowingly, intelligently, and freely choose to waive his right to counsel and choose to represent himself. This assignment is without merit.

**Excessive sentence**

Holley argues that as a first-felony offender, with no remarkable history for violence or problems, there is nothing in his case to indicate that he could not be rehabilitated or that he would be a danger to society upon release. Holley acknowledges that he was angry with Robert Hewlett and held him responsible for his horse's death, but insists that he would move on from that anger and that he should not be removed from society. Holley complains that the trial court failed to specify why some of the sentences were run consecutively rather than concurrently. Finally, Holley complains that the cumulative term of 105 years is constitutionally excessive in light of the fact that the Hewletts were not physically harmed and that there was no significant property damage.

Holley did not file a La. C. Cr. P. art. 881.1 motion to reconsider sentence; therefore, appellate review is limited to the bare claim that the sentence is constitutionally excessive. *State v. Mims,* 619 So. 2d 1059 (La. 1993); *State v. Jones,* 41,449 (La. App. 2 Cir. 9/20/06), 940 So. 2d 61; *State v. Duncan*, 30,453 (La. App. 2 Cir. 2/25/98), 707 So. 2d 164. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the

seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Boehm*, 51,229 (La. App. 2 Cir. 4/5/17), 217 So. 3d 596. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166.

The trial court has wide discretion in imposing sentence within the statutory range. A sentence will not be set aside as excessive unless the defendant shows the trial court abused its discretion. *State v. Hardy*, 39,233 (La. App. 2 Cir. 1/26/05), 892 So. 2d 710; *State v. Young*, 46,575 (La. App. 2 Cir. 9/21/11), 73 So. 3d 473, *writ denied*, 11-2304 (La. 3/9/12), 84 So. 3d 550. The reviewing court does not determine whether another sentence would have been more appropriate, but whether the trial court abused its discretion. *State v. Esque*, 46,515 (La. App. 2 Cir. 9/21/11), 73 So. 3d 1021, *writ denied*, 11-2347 (La. 3/9/12), 84 So. 3d 551.

In cases involving multiple offenses and sentences, the trial court has limited discretion to impose the sentences concurrently or consecutively, but the justification for consecutive sentences must be supported by the record. La. C. Cr. P. art. 883; *State v. Butler*, 51,922 (La. App. 2 Cir. 4/11/18), 247 So. 3d 1006, 1011; *State v. Nixon*, 51,319 (La. App. 2 Cir. 5/19/17), 222 So. 3d 123, *writ denied*, 17-0966 (La. 4/27/18), 239 So. 3d 836; *State v. Robinson*, 49,677 (La. App. 2 Cir. 4/15/15), 163 So. 3d 829, *writ denied*, 15-0924 (La. 4/15/16), 191 So. 3d 1034. Concurrent sentences arising out of a single course of conduct are not mandatory, and consecutive sentences under those circumstances are not necessarily excessive. *State v. Lynn*, 50,575 (La. App. 2 Cir. 5/18/16), 196 So. 3d 607. Factors to be considered include:

the gravity and viciousness of the offense, the harm done to the victims, the risk of danger to the public, the offender's criminal history, and potential for rehabilitation. *State v. Austin*, 49,061 (La. App. 2 Cir. 7/16/14), 146 So. 3d 716, *writ denied*, 14-2323 (La. 9/18/15), 178 So. 3d 140.

For each conviction of attempted murder (whether first degree or second degree), Holley faced a potential sentence of 10-50 years at hard labor, without benefit of parole, probation, or suspension of sentence. La. R.S. 14:30; La. R.S. 14:27. For each conviction for manufacture or possession of a bomb, Holley faced a potential sentence of 0-20 years at hard labor, with an optional maximum fine of $10,000.00. La. R.S. 14:54.3. Finally, aggravated arson carries a penalty of a fine up to $25,000 and 6 to 20 years imprisonment at hard labor; two of those years must be without parole, probation, or suspension of sentence. La. R.S. 14:51.

Here, the state presented a comprehensive case with exhaustive testimony regarding the extensive and overwhelming evidence of Holley's guilt. The record here is more than sufficient to support the punishment imposed, thus the trial court's decision not to recite the details of Holley actions in order to justify these sentence terms or the order to impose them to run consecutively does not constitute an abuse of discretion or require remand. The trial court acknowledged Holley's personal history and his lack of criminal history. The trial court also noted that Holley was a trusted employee at the Hewletts' horse farm, as he had been given free rein of both the facilities and the Hewletts' personal home and had also been included in family holiday events. The trial court made clear that the magnitude of Holley's crimes, borne out of a six-month long rage that was detailed in the "Charlie" journal, and which the court found chilling and frightening,

15

overshadowed any mitigating factors here. The fact that the Hewletts miraculously escaped any physical harm does not negate the emotional trauma that they have suffered. None of the sentences were for the maximum terms available; yet, Holley's conduct surely places him in the category of one of the worst offenders.

Viewing Holley's actions in light of the harm done to society, these sentences, for a total of 105 years, are not disproportionate and do not shock the sense of justice. There is no showing that the trial court abused its discretion in imposing these sentence terms or in imposing consecutive terms. This assignment is without merit.

Our reduction of Holley's convictions for attempted first degree murder to convictions for attempted second degree murder does not warrant remand for resentencing. The sentencing range is exactly the same for both crimes. La. R.S. 14:27(D). Furthermore, based on the evidence, Holley could properly have been convicted of attempted first degree murder *and* aggravated arson, had the verdict form given the jury the opportunity to specify the aggravating factor or factors it found in support of attempted first degree murder.

**Error Patent**

The sentences imposed for manufacture or possession of a bomb were illegally harsh in that the trial court ordered that they be served without benefit of probation, parole, or suspension of sentence. La. R.S. 14:54.3 does not restrict these benefits. The sentences will be amended accordingly.

## CONCLUSION

Holley's convictions for aggravated arson and two counts of manufacturing a bomb are AFFIRMED. We MODIFY Holley's convictions

16

for two counts of attempted first degree murder by reducing them to conviction of two counts of attempted second degree murder.

The sentences imposed for the manufacture or possession of a bomb are MODIFIED in that we remove the restriction of benefits. Otherwise, Holley's sentences are AFFIRMED.