<u>NOT DESIGNATED FOR PUBLICATION</u>

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2023 KA 1316

STATE OF LOUISIANA

VERSUS

ANDREW DAVID WETZEL

*Judgment Rendered:* NOV 2 2 2024

\*\*\*\*\*\*\*\*

22ND Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Case No. 1077-F-2021

**The Honorable Franz L. Ziblich Ad Hoc Judge Presiding**

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

Warren L. Montgomery
District Attorney
J. Collin Sims
Assistant District Attorney
Covington, Louisiana

Counsel for Plaintiff/Appellee
State of Louisiana

Bertha M. Hillman
Covington, Louisiana

Counsel for Defendant/Appellant
Andrew David Wetzel

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

BEFORE: McCLENDON, WELCH, AND LANIER, JJ.

**LANIER, J.**

The defendant, Andrew David Wetzel, was charged by bill of information with simple burglary, a violation of La. R.S. 14:62, and initially pled not guilty. He later withdrew his not guilty plea, pled guilty as charged, and was sentenced to six years imprisonment at hard labor. He subsequently stipulated to his status as a second felony habitual offender.[1] The trial court vacated the original sentence and imposed an enhanced sentence of twenty years imprisonment at hard labor, without the benefit of probation or suspension of sentence. The defendant later filed pro se motions, seeking in part to withdraw his guilty plea, which the trial court denied. The defendant now appeals, assigning error in a counseled and pro se brief to pre-plea rulings, his waiver of counsel, his guilty plea, and his stipulation to the habitual offender bill of information. For the following reasons, we affirm the conviction, habitual offender adjudication, and sentence.

## STATEMENT OF FACTS

As the defendant pled guilty, the facts of the offense were not developed.[2] According to the bill of information, police reports, and pre-plea testimony in the record, the offense occurred on or between December 14, 2020, and December 15, 2020, at Dabdoub Investments and Insurance ("Dabdoub"), located at 601 Asbury Drive in Mandeville, Louisiana. Surveillance footage showed a vehicle parked on Asbury Drive. A man exited the vehicle, walked toward Dabdoub, and subsequently returned to his vehicle carrying objects. The defendant was identified as the owner of the vehicle, and a search of his nearby office recovered equipment stolen from Dabdoub.

---

[1] The State filed a habitual offender bill of information alleging a prior conviction in 2008 of issuing worthless checks. The defendant stipulated to the allegation of the habitual offender bill of information.

[2] At the guilty plea proceeding, the defendant agreed to the stipulation that all discovery previously introduced by the State established a factual basis.

2

## COUNSELED ASSIGNMENT OF ERROR NUMBER 1
## PRO SE ASSIGNMENTS OF ERROR NUMBERS 6, 10, 12-16

The defendant has one counseled and several pro se assignments of error challenging his guilty plea. In counseled assignment of error number one and pro se assignments of error numbers six and fifteen, he argues his plea was not free, knowing, and voluntary. He argues he should be allowed to withdraw his guilty plea and plead guilty under **North Carolina v. Alford**, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), and **State v. Crosby**, 338 So.2d 584 (La. 1976).[3] Additionally, in related pro se assignments of error, he argues he is actually innocent (number ten), the State failed to provide a factual basis for the plea (numbers thirteen and fourteen), the plea agreement was breached when the State failed to release his property (number twelve), and he believed his guilty plea included an agreement to a reduced sentence (number sixteen).

A guilty plea is a conviction and, therefore, should be afforded a great measure of finality. **State v. Young**, 2020-0049 (La. App. 1st Cir. 11/6/20), 315 So.3d 904, 910, writ denied, 2020-01402 (La. 2/9/21), 310 So.3d 177. A plea of guilty waives a criminal defendant's fundamental right to a jury trial, right to confront his accusers, and his privilege against self-incrimination. Thus, due process requires, as a prerequisite to its validity, that the plea be a voluntary and intelligent relinquishment of known rights. There must be an affirmative showing in the record that the defendant was informed of the constitutional privilege against self-incrimination, the right to trial by jury, and the right to confront his accusers

---

[3] The "best interest" or **Alford** plea is one in which a defendant pleads guilty while maintaining his innocence. **State v. McCoil**, 2005-658 (La. App. 5th Cir. 2/27/06), 924 So.2d 1120, 1122. Pleas coupled with claims of innocence should not be accepted "unless there is a factual basis for the plea" and until the judge taking the plea has inquired into and sought to resolve the conflict between the waiver of trial and the claim of innocence. **Alford**, 400 U.S. at 38, n.10, 91 S. Ct. at 167, n.10. **Crosby** allows a defendant to plead guilty while expressly reserving the right to seek appellate review of an error the defendant believes "made useless any continued trial of their defense." **Crosby**, 338 So.2d at 586.

and that he knowingly and intelligently waived them. See **Boykin v. Alabama**, 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969); **State v. Joseph**, 2012-0085 (La. App. 1st Cir. 2/15/13), 2013 WL 596149, *1 (unpublished).

Upon motion of the defendant and after a contradictory hearing, the trial court may permit a plea of guilty to be withdrawn at any time before sentence. La. Code Crim. P. art 559(A). In **State v. Lewis**, 421 So.2d 224, 225-26 (La. 1982), the Louisiana Supreme Court held that a trial court may permit the withdrawal of a guilty plea after sentencing if the court finds that the guilty plea was not entered freely and voluntarily, or there was an inadequate **Boykin** colloquy advising the defendant of the rights he was waiving by pleading guilty, making the guilty plea constitutionally infirm. A constitutionally infirm guilty plea may be set aside either by means of an appeal or postconviction relief. **Young**, 315 So.3d at 907.

There is no absolute right to withdraw a previously entered plea of guilty. The withdrawal of a guilty plea is within the discretion of the trial court and is subject to reversal only if that discretion is abused or arbitrarily exercised. **State v. Sheppard**, 2018-1412 (La. App. 1st Cir. 6/27/19), 2019 WL 2635678, *1 (unpublished). Generally, the denial of a motion to withdraw a guilty plea will not be reversed on appeal if the record clearly shows the defendant was informed of his rights and the consequences of his plea, and the plea was entered voluntarily. **State v. Cheatham**, 2016-1648 (La. App. 1st Cir. 6/2/17), 222 So.3d 757, 759.

A criminal plea agreement is analogous to a civil compromise. **State v. Rider**, 2023-0164 (La. App. 1st Cir. 11/9/23), 379 So.3d 49, 52, writ denied, 2023-01711 (La. 6/5/24), 385 So.3d 1160; see La. Civ. Code art. 3071 et seq. In determining the validity of plea bargain agreements, Louisiana courts generally refer to rules of contract law, while recognizing at the same time that a criminal defendant's constitutional right to fairness may be broader than his or her rights under contract law. **State v. Porche**, 2020-0246 (La. App. 1st Cir. 12/30/20), 318

4

So.3d 184, 187-88; see also La. Civ. Code art. 1927. The four elements of a valid contract are: 1) the parties' capacity to contract; 2) the parties' mutual consent that is freely given; 3) the existence of a certain, lawful object for the contract; and 4) the existence of a lawful purpose or cause of the contract. **Rider**, 379 So.3d at 52; see La. Civ. Code arts. 1918, 1927, 1966, & 1971.

Error, fraud, or duress may vitiate consent. La. Civ. Code art. 1948. If the plea agreement calls for a legal sentence and the trial court agrees, the trial court is bound by the terms of the agreement. Under substantive criminal law, there are two alternative remedies for a breach of a plea bargain: (1) specific performance of the agreement, or (2) nullification or withdrawal of the plea. **Porche**, 318 So.3d at 188. The party demanding performance of a plea bargain agreement has the burden of proving its existence and the terms thereof. **State v. Cotton**, 2015-1623 (La. App. 1st Cir. 4/15/16), 194 So.3d 69, 79, writ denied, 2016-0897 (La. 4/24/17), 221 So.3d 69.

Herein, on June 27, 2022, the **Boykin** proceeding for the instant case was combined with a separate case in which the defendant, in accordance with interrelated plea agreements,[4] pled guilty to simple arson, stipulated to his status as a habitual offender, and was sentenced to an enhanced sentence of twenty years imprisonment at hard labor, to be served concurrent to the twenty-year sentence imposed in the instant case. Prior to each plea, the defendant was questioned and informed of his rights in two successive colloquies, first as to the simple arson case, and then as to his plea in the instant case.

Before the initial plea, the trial court questioned the defendant regarding his date of birth and confirmed his ability to read and write. As to each plea, the trial court informed the defendant of his **Boykin** rights (right to trial by jury, right

---

[4] The negotiations involving both pleas began on June 7, 2022, when the parties discussed seventeen possible conditions, most of which are not at issue in this appeal. Thereafter, the State delivered a letter to the defendant confirming the agreed upon conditions of the pending pleas.

5

against compulsory self-incrimination, and right of confrontation), his right to an appeal, and that by pleading guilty, he would be waiving his rights. The defendant indicated he understood those rights and understood he was waiving those rights by pleading guilty.

The defendant agreed that he wished to plead guilty and denied being forced, threatened, coerced, intimidated, or made any promises. The defendant signed a waiver of rights form in this case and read and understood the rights stated therein. The defendant agreed to a stipulation that the discovery within his possession consisted of a factual basis for the offense. Prior to the stipulation, the trial court asked the defendant if he knew what a simple burglary was and the defendant responded, "Unauthorized entry to commit a theft or any felony therein." The trial court further asked, "And did you in fact, do that?" The defendant replied, "Yes, Your Honor." Additionally, in advising the defendant of his **Boykin** rights, the trial court discussed the State's burden of proof in a trial, and the defendant confirmed he understood the State's burden to prove each element of the offense. The defendant further confirmed he understood he was relieving the State of this duty by pleading guilty.

At the hearing on the defendant's motion to withdraw his guilty plea on August 3, 2022, and now on appeal, the defendant claims he believed there would be a separate hearing on an **Alford** plea. The State pointed to the language in its pre-**Boykin** letter, in which the State detailed the agreed upon conditions of the pleas and expressly rejected a plea pursuant to **Crosby** or **Alford**. As asserted in his pro se brief, at the hearing the defendant also raised the claim that his property, a computer and a cell phone, had not been released. The State and the trial court agreed that an order to release the property had been signed but put aside after the defendant moved to withdraw his plea, as the property consisted of evidence in the pending case. The trial court denied the motion to withdraw the defendant's plea,

repeatedly noting that the conditions of the plea agreement were fully covered with the defendant. On February 8, 2023, the motion to withdraw was re-urged and denied again by the trial court.

The record does not reflect that the instant case involved a plea pursuant to **Alford**. As previously detailed, at the **Boykin** hearing the defendant did not claim his innocence or enter an **Alford** plea, he specifically stipulated to the existence of a factual basis for the plea, and he agreed that he committed the offense. Since the defendant did not proclaim his innocence, the trial court was not put on notice that there was a need for an inquiry into the factual basis. Thus, a factual basis was not required during the guilty plea colloquy. See **State v. Fullilove**, 2011-34 (La. App. 5th Cir. 12/13/11), 81 So.3d 809, 815; see also **State v. Gonzalez**, 2009-2282 (La. App. 1st Cir. 5/7/10), 2010 WL 1838401, *2 (unpublished) (the due process clause imposes no constitutional duty on state trial judges to ascertain a factual basis prior to accepting a guilty plea). Further, at the pre-plea hearing to discuss possible terms of the pleas, the defendant made clear he had no intention to plead under **Crosby**. Subsequently, at the guilty plea proceedings, the defendant did not preserve any issue for appeal pursuant to **Crosby**. An unqualified plea of guilty waives all non-jurisdictional defects and precludes their review by either appeal or post-conviction relief. **Crosby**, 338 So.2d at 588. Accordingly, insofar as the defendant seeks to assert a claim of actual innocence on appeal, any such claim was waived when he entered the unqualified guilty plea.[5]

Moreover, we find the defendant has failed to show any breach of the terms of the plea agreement. In its letter detailing the terms of the plea, the State noted it had no objection to the release of the defendant's property to his family. The

---

[5] We note that the pre-plea agreement indicates that the defendant wished to make an **Alford** plea, as he felt it was in his best interests. However, as stated above, because the defendant stipulated in court that he committed the offense, an **Alford** plea was not possible in this matter. See **McCoil**, 924 So.2d at 1122.

7

record reflects the defendant pled guilty on June 27, 2022, and the property was ordered released on June 28, 2022. However, the defendant moved to withdraw the plea on June 30, 2022, and July 8, 2022, and the property was ordered held pending resolution of the motions. As previously stated, the motions were denied on August 3, 2022, and February 8, 2023. Subsequently, the defendant's property was again ordered released on March, 3, 2023. There was no specific deadline or time period stated in the agreement regarding the release of the defendant's property, only that the State would not object thereto. Thus, there is no indication in the record of a breach by the State regarding the release of the defendant's property. See **Sheppard**, 2019 WL 2635678 at *4.

In his pro se brief, the defendant also makes a general, unsupported inquiry as to whether he believed he was pleading guilty with an agreement to reduce his sentence. A mere statement of an assigned error in brief without argument or citation of authority does not constitute briefing. **State v. Jarvis**, 2021-1181 (La. App. 1st Cir. 2/25/22), 340 So.3d 1137, 1141-42. This court may consider as abandoned any assignment of error that has not been briefed. See Uniform Rules of Louisiana Courts of Appeal, Rule 2-12.4(B)(4). As the defendant failed to develop any argument in support thereof, we consider pro se assignment of error number sixteen abandoned.

Further, we cannot say that the trial court abused its discretion in refusing to allow the defendant to withdraw his guilty plea in this case. As stated, a defendant has no absolute right to withdraw a guilty plea. Such a withdrawal is predicated on a legal cause, that is, on a showing made by a defendant that his plea bargain was constitutionally infirm, creating a legal defect that nullifies the agreement between the parties. See **State v. Williams**, 2017-0339 (La. App. 1st Cir. 9/15/17), 2017 WL 4082429, *1 (unpublished). The record reflects a knowing and voluntary waiver of the defendant's rights and the trial court's compliance with the

8

constitutional requirements for the taking of voluntary guilty pleas. The defendant was sentenced in accordance with the sentencing agreement set forth in the record prior to and at the time of the pleas, to twenty years on each habitual offender adjudication, to be served concurrently. Thus, we find no merit in counseled assignment of error number one, or pro se assignments of error numbers six, ten, and twelve through sixteen.

## COUNSELED ASSIGNMENT OF ERROR NUMBER 2
## PRO SE ASSIGNMENTS OF ERROR NUMBERS 5 AND 8

In counseled assignment of error number two, the defendant argues his waiver of counsel was not intelligently and voluntarily made. In pro se assignments of error numbers five and eight, he argues the trial court erred in allowing him to plead guilty pro se and stipulate to the habitual offender bill of information without a hearing pursuant to **Faretta v. California**, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

The Louisiana and United States Constitutions guarantee a criminal defendant's right to the assistance of counsel. However, a defendant may elect to represent himself if the choice is "knowingly and intelligently made" and the assertion of the right is "clear and unequivocal." U.S. Const. amend. VI; La. Const. art. I, § 13; **Faretta**, 422 U.S. at 835, 95 S.Ct. at 2541; **State v. Bonit**, 2005-0795 (La. App. 1st Cir. 2/10/06), 928 So.2d 633, 637, writ denied, 2006-1211 (La. 3/16/07), 952 So.2d 688. An accused has the right to choose between the right to counsel and the right to self-representation. See **State v. Brown**, 2018-01999 (La. 9/30/21), 330 So.3d 199, 223, cert. denied, ___ U.S. ___, 142 S.Ct. 1702, 212 L.Ed.2d 596 (2022) (citation omitted).

In **Faretta**, the United States Supreme Court recognized that a trial court may not force a lawyer upon a defendant when he insists he wants to conduct his

9

own defense and voluntarily and intelligently elects to proceed without counsel. However, he must ask clearly and unequivocally to proceed pro se and he must also make his request in a timely manner. See **Faretta**, 422 U.S. at 834-35, 95 S.Ct. at 2541; **Bonit**, 928 So.2d at 637. Further, he must be made aware of the dangers and disadvantages of self-representation so the record demonstrates "he knows what he is doing and his choice is made with eyes open." **Faretta**, 422 U.S. at 835, 95 S.Ct. at 2541. **Faretta** made clear that an accused's "technical legal knowledge, as such, [is] not relevant to an assessment of his knowing exercise of the right to defend himself." **Id.** 422 U.S. at 836, 95 S.Ct. at 2541. In **State v. Santos**, 99-1897 (La. 9/15/00), 770 So.2d 319 (per curiam), the Louisiana Supreme Court held that a trial court confronted with an accused's unequivocal request to represent himself need only determine whether the accused is competent to waive counsel and is "voluntarily exercising his informed free will." **Santos**, 770 So.2d at 321 (quoting **Faretta**, 422 U.S. at 835, 95 S.Ct. at 2541).

The United States Supreme Court has not prescribed any formula or script to be read to a defendant who elects to proceed without counsel. The information a defendant must possess in order to make an intelligent election to proceed without counsel will depend on a range of factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding. Evidence of a defendant's prior experience with the criminal justice system is relevant to the question of whether or not he knowingly waived constitutional rights. **State v. Robinson**, 2008-0820 (La. App. 1st Cir. 6/4/10), 42 So.3d 435, 437-38, writ denied 2010-1549 (La. 5/20/11), 63 So.3d 974. Whether the defendant has knowingly, intelligently, and unequivocally asserted the right to self-representation must be determined based on the facts and circumstances of each case. See **Brown**, 330 So.3d at 223 (citation omitted).

10

Herein, the record reflects that prior to his guilty plea, the defendant confirmed he wished to terminate his counsel's appointment, also noting he had informed her of such.[6] The trial court stated it could not advise the defendant to represent himself, adding, "It's never a good idea for a person to represent themselves . . . I know you have a lot of experience with the law, but it's a layman's experience, not an attorney's. So it's not wise for you to not have an attorney." The defendant reiterated that he did not want an attorney, adding, "It's a simple plea. I've done it before a few times."

The defendant said he understood the ramifications of his decision and confirmed it was his desire to represent himself. The trial court then discussed the terms of the plea agreement as to both cases and the habitual offender proceedings. The defendant stated he understood the agreements, noting the terms were previously discussed, and confirmed he was previously advised against self-representation. The first **Boykin** colloquy then began. The defendant was again advised of his right to an attorney and again stated he did not want an attorney.

After a thorough review of the record and the applicable jurisprudence, we find no violation of the defendant's constitutional right to counsel or **Faretta** in this matter. The record shows the trial court judge carefully inquired into the defendant's decision to terminate counsel and represent himself at the guilty plea and habitual offender proceedings. The defendant clearly and unequivocally asserted his right to represent himself in proper person. He made this decision despite the trial court's warnings about the dangers and disadvantages of self-representation. Further, the defendant's prior experience with the judicial process and criminal justice system is relevant to his waiver of counsel.[7] We find the

---

[6] Several other attorneys appointed to represent the defendant withdrew due to his apparent aversion to being represented by counsel.

[7] The instant record shows the defendant has a history of pro se filings and self-representation. In **State v. Wetzel**, 2014-1788 (La. App. 1st Cir. 3/27/15) (unpublished), this court noted the

11

defendant's decision was made with his eyes wide open. Thus, the record does not support the defendant's claims to the contrary in his counseled and pro se brief. Accordingly, counseled assignment of error number two, and pro se assignments of error numbers five and eight are without merit.

## PRO SE ASSIGNMENTS OF ERROR NUMBERS 3, 4, 7, AND 11

In his pro se brief, the defendant raises additional arguments challenging his stipulation as a habitual offender. Specifically, his asserts four pro se assignments of error arguing the trial court: failed to advise him of his right to remain silent (number three); failed to advise him of his right to a hearing (number four); erred in finding his stipulation was free and voluntary (number seven); and failed to advise him of the fifteen-day period to enter objections (number eleven).

A trial court's failure to properly advise a defendant of his rights under the Habitual Offender Law requires that the habitual offender adjudication and sentence be vacated. Prior to accepting a defendant's acknowledgement, confession, or admission to the allegations of the habitual offender bill, the trial court must advise the defendant of the right to remain silent and of the right to a formal hearing wherein the State would have to prove the allegations of the habitual offender bill. **State v. Harmason**, 2008-0399 (La. App. 1st Cir. 11/14/08), 2008 WL 4908728, *2 (unpublished). Furthermore, the language of the Habitual Offender Law must be strictly construed. An implicit and integral aspect of the requirements of La. R.S. 15:529.1 is the court's duty to inform the defendant

---

defendant had filed more than fifty writ applications in the six-year period prior to that decision, further stating the defendant has habitually burdened and abused the legal system. In **Wetzel v. Tanner**, 2016-5765 (E.D. La. 2016), 2016 WL 3127302, *1 (unpublished), it was noted that, according to the federal court's records, he filed more than forty civil lawsuits in that particular federal court. At least twelve of his prior civil complaints, filed while he was incarcerated, were dismissed as frivolous and/or for failure to state a claim for which relief could be granted. He was barred on at least twenty-three occasions from proceeding with his civil complaints as a pauper in federal district court pursuant to 28 U.S.C. § 1915(g).

12

of his right to remain silent. **State v. Gonsoulin**, 2003-2473 (La. App. 1st Cir. 6/25/04), 886 So.2d 499, 501 (en banc), writ denied, 2004-1917 (La. 12/10/04), 888 So.2d 835.

La. R.S. 15:529.1(D)(1)(a), which details the requirements for advising a defendant of his rights under the Habitual Offender Law, in pertinent part, provides:

> If, at any time . . . it shall appear that a person convicted of a felony has previously been convicted of a felony . . . the district attorney of the parish in which subsequent conviction was had may file an information accusing the person of a previous conviction. Whereupon the court in which the subsequent conviction was had shall cause the person . . . to be brought before it and *shall inform him of the allegation contained in the information and of his right to be tried as to the truth thereof according to law and shall require the offender to say whether the allegations are true. If he denies the allegation of the information or refuses to answer or remains silent, his plea or the fact of his silence shall be entered on the record and he shall be given fifteen days to file particular objections to the information . . .*

(Emphasis added).

Louisiana Code of Criminal Procedure article 551 provides that an arraignment "consists of the reading of the indictment to the defendant by the clerk in open court, and the court calling upon the defendant to plead." The reading of the indictment may be waived. The arraignment and the defendant's plea shall be entered into the minutes of the court and shall constitute a part of the record. La. Code Crim. P. art. 551(A). While a habitual offender proceeding results in sentencing enhancement, rather than a separate criminal conviction, the requirement under La. R.S. 15:529.1(D(1)(a) that the defendant be brought before the court, informed of the allegations and of his right to a formal hearing, and be made to admit or deny the allegations, conforms with the above definition of an arraignment. **Gonsoulin**, 886 So.2d at 501-02.

In the instant case, after the trial court accepted the defendant's guilty plea and imposed the original sentence, the trial court announced the habitual offender bill of information filed by the State, asked the defendant if he had reviewed it, and read the predicate offense alleged therein. The trial court informed the defendant of his rights regarding the habitual offender bill of information, stating, "You don't have to admit that you're a multiple offender. It would be up to the State to prove to my satisfaction[.]" The trial court stated the defendant had the privilege against self-incrimination and could not be forced to testify, had the right to subpoena witnesses, and had the right to confront and cross-examine witnesses. The trial court further reiterated, "Do you understand that you do not have to stipulate, but you can if you'd like." The defendant then confirmed that he wished to stipulate to the allegation.

Initially, we note the trial court was not statutorily required to inform the defendant of the fifteen days to object to the habitual offender bill of information, as the defendant did not deny the allegation, refuse to answer, or stand silent as to the bill. We further find the defendant was sufficiently advised of his rights at his arraignment, the advice of rights was sufficient to comply with the requirements of La. R.S. 15:529.1(D)(1)(a), and the defendant confirmed he understood those rights. The law does not expressly state the court is required to inform the defendant of his rights at each phase of the habitual offender proceeding. The law requires the record demonstrate the proceedings as a whole were fundamentally fair and accorded the defendant due process of law. See **Gonsoulin**, 886 So.2d at 502. Herein, the record as a whole demonstrates the defendant was accorded fundamental fairness and due process of law. We find the defendant's interests were fully protected. Thus, we find no merit in pro se assignments of error numbers three, four, seven, and eleven.

14

## PRO SE ASSIGNMENTS OF ERROR NUMBERS 1, 2, AND 9

In pro se assignment of error number one, the defendant argues the trial court erred in denying his motion to suppress the search warrant and the items found in executing the warrant. In pro se assignment of error number two, he argues the trial court erred in finding probable cause to support the charge at the preliminary hearing. Finally, in pro se assignment of error number nine, the defendant argues the "cumulative impact" of the errors raised in the pro se brief violated his due process rights.

Under both state and federal jurisprudence, an unqualified plea of guilty waives all non-jurisdictional defects and precludes their review by either appeal or post-conviction relief. **Crosby**, 338 So.2d at 588; **State v. Kendall**, 2016-0207 (La. App. 1st Cir. 9/15/17), 231 So.3d 661, 663. In this case, no pre-plea rulings were preserved for appeal under **Crosby**. Moreover, the primary function of the preliminary examination is to ensure that probable cause exists to hold the accused in custody or under bond obligation. Thus, errors alleged to have occurred at the preliminary examination hearing are moot after the defendant has been convicted. **State v. Irby**, 2012-0713 (La. App. 1st Cir. 6/7/13), 2013 WL 2490363, *4 (unpublished), writ denied, 2013-1606 (La. 1/27/14), 130 So.3d 958. Thus, the issues raised in pro se assignments of error numbers one and two were not preserved for review and/or are otherwise moot. Moreover, as no merit has been found in the defendant's other assigned errors, his due process claim raised in pro se assignment of error number nine based on the alleged cumulative impact of the other assigned errors is likewise meritless.

## PATENT ERROR REVIEW

In his pro se brief, the defendant asks this court to review the record for patent errors. Whether requested or not on appeal, pursuant to La. Code Crim. P.

15

art. 920(2), this court routinely conducts a review of all appeals for error discoverable by mere inspection of the pleadings and proceedings and without inspection of the evidence. **State v. Anthony**, 2023-0117 (La. App. 1st Cir. 11/3/23), 378 So.3d 766, 775, writ denied, 2024-00027 (La. 5/21/24), 385 So.3d 242. After a careful review of the record, we have found one patent error.

The record reflects the trial court advised the defendant he had "two years to file" for post-conviction relief. A defendant generally has two years "after the judgment of conviction and sentence has become final" to seek post-conviction relief. La. Code Crim. P. art. 930.8(A). Thus, the trial court failed to adequately advise the defendant of the prescriptive period for seeking post-conviction relief. However, the trial court's failure to properly advise the defendant has no bearing on the sentence and is not grounds to reverse the sentence or remand for resentencing. **State v. Hollins**, 2023-0785 (La. App. 1st Cir. 3/19/24), 387 So.3d 641, 652, writ denied, 2024-00487 (La. 10/1/24), ___ So.3d ___, 2024 WL 4355007. Out of an abundance of caution and in the interest of judicial economy, we instead advise the defendant La. Code Crim. P. art. 930.8 generally provides that no application for postconviction relief shall be considered if it is filed more than two years after the judgment of conviction and sentence have become final under the provisions of La. Code Crim. P. arts. 914 or 922. **Hollins**, 387 So.3d at 652.

For all of the above reasons, the defendant's conviction, habitual offender adjudication, and sentence are affirmed.

**CONVICTION, HABITUAL OFFENDER ADJUDICATION, AND SENTENCE AFFIRMED.**